2014 PA Super 186

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
                Appellee   :
   :
                v.   :
   :
LEE ALLEN KIMMEL,   :
   :
                Appellant   :   No. 126 MDA 2013

Appeal from the Judgment of Sentence December 18, 2012
In the Court of Common Pleas of Cumberland County
Criminal Division No(s).: CP-21-CR-0003380-2011

BEFORE: ALLEN, LAZARUS, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:          **FILED AUGUST 29, 2014**

Appellant, Lee Allen Kimmel, appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas following his jury convictions of fleeing or attempting to elude a police officer ("fleeing")—graded as a felony of the third degree ("F3"), driving while under the influence of alcohol/general impairment ("DUI"), DUI/general impairment with refusal,[1] and related summary offenses. He avers the trial court erred in: (1) denying his suppression motion, where the arresting officer stopped him outside of the officer's primary jurisdiction and the court found the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3733(a), 3802(a)(1), 3804(b)(4).

officer had violated the Municipal Police Jurisdiction Act[2] ("MPJA"); (2) finding the evidence was sufficient for DUI-refusal;[3] (3) finding the DUI-refusal conviction was not against the weight of the evidence; and (4) holding the sentences for his DUI and F3-fleeing convictions did not merge.[4] We agree that the DUI and F3-fleeing merge for sentencing purposes but deny relief on Appellant's remaining claims. Accordingly, we affirm the convictions but vacate the judgment of sentence and remand for resentencing.

"On November 22, 2011, around 10:45 p.m., Cumberland County Dispatch received a call from Linda Cheskey indicating that a man[, Appellant,[5]] appeared very intoxicated at the Sheetz gas station in Mt. Holly [Springs], Cumberland County." Trial Ct. Op., 3/28/12, at 3.[6] She

---

[2] 42 Pa.C.S. §§ 8951-8954.

[3] **See** 75 Pa.C.S. § 1547 (also known as "implied consent law").

[4] For ease of disposition, we have reordered Appellant's issues.

As we discuss in detail **infra**, fleeing is generally graded as a misdemeanor of the second degree ("M2"). 75 Pa.C.S. § 3733(a.2)(1). However, Appellant's conviction was graded as an F3 because he was found to have committed the offense while also committing driving while under the influence of alcohol. **See** 75 Pa.C.S. § 3733(a.2)(2)(i).

[5] At trial, Ms. Cheskey identified Appellant.

[6] The Honorable Christylee L. Peck presided over the suppression proceedings and issued a Pa.R.A.P.1925(a) opinion addressing Appellant's suppression issue. Trial Ct. Op., 5/3/13. The Honorable M. L. Ebert, Jr.

described his vehicle as a blue pickup truck and provided his license plate number. Appellant left the Sheetz parking lot and turned right onto Mill Street, northward to South Middleton Township. Within thirty to forty seconds, Ms. Cheskey "saw a police car approaching with its emergency lights on." *Id.* at 4.

The officer in the police vehicle was Officer Jason Beltz of the Mt. Holly Springs Borough Police Department, and he was responding to the call about Appellant. Officer Beltz did not see Appellant's truck at the Sheetz parking lot, but travelled in the same direction Appellant was reported to have gone. N.T. Suppression H'rg, 5/25/12, at 10-11, 25-26. Officer Beltz continued on Mill Street to the borough border, which was approximately 3,000 feet from Sheetz. *Id.* at 27. The officer initially had his lights and sirens activated, but turned them off because there was heavy rain, which "was making it difficult to see." *Id.* He continued another half mile in South Middleton Township and then turned right onto Zion Road. *Id.* at 28. When asked at the suppression hearing why he turned onto Zion Road, Officer Beltz replied that in the interim, dispatch advised him of the home address of the registered owner of the vehicle, and Officer Beltz knew that Zion Road led to Cedar Street, which was Appellant's address. *Id.* at 11-12. "South Middleton Township is patrolled by the Pennsylvania State Police, but Officer

---

presided over trial and authored a Pa.R.A.P. 1925(a) opinion addressing Appellant's remaining claims. Trial Ct. Op., 3/28/13.

Beltz made no attempt to contact the State Police." Trial Ct. Op., 3/28/13, at 5. Upon turning onto Zion Road, Officer Beltz saw Appellant's truck and "reactivated his lights as the truck entered a posted no-trespass area."[7] *Id.*

Eventually the truck stopped, by which time Officer Beltz had driven a mile to a mile and a half outside his jurisdiction. N.T. Suppression H'rg at 31.

> Officer Beltz . . . conduct[ed] a traffic stop and asked [Appellant] to produce his license and registration, which [Appellant] had difficulty finding. According to Officer Beltz, [Appellant] had a distinct odor of alcohol on his breath, appeared disheveled, and spoke with slurred speech. When Officer Beltz asked [Appellant] to exit his vehicle to perform a field sobriety test, [Appellant] initially complied but was unstable on his feet. [Appellant] then told the Officer that he had done nothing wrong and . . . reenter[ed] and attempt[ed] to restart the engine. Officer Beltz removed the keys, but [Appellant] exited the vehicle and pushed Officer Beltz away. [Appellant] then produced a second set of keys, reentered the vehicle, and locked the door. He turned on the engine and drove away.
>
> After a brief attempt to pursue [Appellant] as he drove across a field, Officer Beltz went to [Appellant's] parents' home in an attempt to relocate [Appellant]. Officer Beltz subsequently discovered [Appellant's] truck near his parents' home hung up [sic] on a tree stump with its back wheels spinning. [Appellant] exited his vehicle and was taken into custody by Officer Beltz. The arrest took place in South Middleton Township.
>
> After [taking Appellant] to Cumberland County Prison for processing, Officer Beltz read [Appellant] the DL-26 form verbatim. According to Officer Beltz, after reading the form and asking if [Appellant] would submit to a blood

---

[7] At the suppression hearing, Officer Beltz referred to this area as both a parking area and a train yard. N.T. Suppression H'rg at 29.

> test, [Appellant] "jumped out of his seat and basically made a threatening move towards [Officer Beltz.]" The actual video recording of [Appellant's] actions . . . was shown to the jury[, which] personally observed what [Appellant] did at the Booking Center.

*Id.* at 5-6 (citations to trial transcript omitted).

Appellant was charged with fleeing, DUI, and related offenses. On April 13, 2012, he filed a motion to suppress all evidence obtained from the vehicle stop, on the ground that Officer Beltz violated the Municipal Police Jurisdiction Act in stopping and arresting him outside Officer Beltz's primary jurisdiction. The court held a suppression hearing on May 25, 2012, and denied the motion on September 26th. The court found that Officer Beltz lacked the requisite probable cause to suspect Appellant had committed an offense and thus violated Section 8953, but nevertheless found the infraction was minimal and did not necessitate suppression of the evidence.

A jury trial commenced on December 4, 2012. The jury found Appellant guilty of an F3 fleeing, DUI—third offense, DUI with refusal-third offense.[8] Furthermore, the trial court found Appellant guilty of the summary offenses of public drunkenness and careless driving.[9] On December 18th, the court imposed sentences of imprisonment as follows: (1) DUI with refusal—fourteen months to four years; and (2) fleeing—a consecutive eight

---

[8] The DUI convictions were Appellant's fourth. N.T. Sentencing H'rg at 4.

[9] 18 Pa.C.S. § 5505; 75 Pa.C.S. § 3714(a).

months to two years.[10] Appellant filed a timely post-sentence motion, which was denied. He then filed a timely notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement. As stated above, on appeal Appellant challenges: the denial of his suppression motion, the sufficiency and weight of the evidence for DUI-refusal, and the court's finding that his DUI convictions did not merge with fleeing. We agree that the sentences merge but deny relief on Appellant's remaining issues.

Appellant's first claim is that the trial court erred in denying his suppression motion, where it had found Officer Beltz violated Section 8953 of the Municipal Police Jurisdiction Act. Appellant avers that the officer lacked probable cause, where he relied solely on a 911 call. Appellant contends that Officer Beltz "traveled a significant distance" to pursue "a vehicle he had never laid eyes on" "without having any idea where . . . the vehicle . . . was headed." Appellant's Brief at 32, 36. He maintains that the officer's "foray into the neighboring jurisdiction without so much as even catching sight of [Appellant] could indicate a certain degree of bad faith . . . or, at the very least, a fishing expedition." *Id.* at 36. Appellant further

---

[10] The aggregate sentence is twenty-two months to six years' imprisonment. The court also imposed a Recidivism Risk Reduction Incentive ("RRRI") sentence of ten months and fifteen days for DUI/general impairment with refusal and an RRRI sentence of six months for fleeing. *See* 61 Pa.C.S. §§ 4501-4512 (recidivism risk reduction incentive). Additionally, the court imposed fines and costs. The court found that both DUI and public drunkenness merged with DUI with refusal.

asserts he suffered "substantial prejudice" because he "would not have received charges if [Officer] Beltz followed the MPJA." *Id.* We find no relief is due.

We first note the standard of review of a suppression ruling:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Hilliar*, 943 A.2d 984, 989 (Pa. Super. 2008) (citation omitted).

Section 8953(a) of the MJPA provides in pertinent part:

> § 8953. Statewide municipal police jurisdiction.
>
> **(a) General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> \* \* \*
>
> (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2). This Court has summarized:

> Under subsection two, if a police officer possesses probable cause that an offense has been committed in his or her primary jurisdiction, and is in hot and fresh pursuit of the perpetrator of the offense, the officer is vested with the same powers of law enforcement when the officer crosses out of his or her primary jurisdiction.

*Hilliar*, 943 A.2d at 989. In reviewing

> whether a violation of the MPJA has occurred, and if so, whether suppression of the evidence is warranted[, w]e have taken a case by case approach, noting that the MPJA is to be construed liberally to achieve its purpose so as "to promote public safety while maintaining police accountability to local authority; it is not intended to erect impenetrable jurisdictional walls benefit[ing] only criminals hidden in their shadows."

*Id.* at 990-91 (citation omitted).

In *Commonwealth v. Peters*, 915 A.2d 1213 (Pa. Super. 2007), this Court

> held that suppression of the evidence was not warranted even if there had been a violation of the MPJA.[ ] . . .
>
> > One of the principal purposes of the MPJA is to promote public safety while placing a general limitation on extraterritorial police patrols. It is in the interest of promoting public safety, therefore, that the MPJA exceptions contemplate and condone extra-territorial activity in response to specifically identified criminal behavior that occur[s] within the primary jurisdiction of the police.
> >
> > Because of this purpose, our Supreme Court has explained that suppression of evidence is not always an appropriate remedy when there has been a violation of the MPJA. [The Supreme Court has] stated:

> In **Commonwealth v. Mason**, . . . 490 A.2d 421 (1985), we held that suppression of evidence was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to the issuance and execution of a search warrant outside of a police officer's primary jurisdiction where said violation did not implicate fundamental, constitutional concerns, was not conducted in bad faith or did not substantially prejudice the accused in the sense that the search would not otherwise have occurred or would not have been as intrusive. Automatic exclusion of evidence obtained by searches accompanied by relatively minor infractions of the rules of criminal procedure would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual liberties.

**Hilliar**, 943 A.2d at 991-92 (some citations omitted).

In the case *sub judice*, Appellant emphasizes that at the time Officer Beltz entered the neighboring jurisdiction, he still had not seen Appellant's car. Appellant's argument, however, ignores the salient facts that the trial court considered. While the court found that Officer Beltz did **not** have probable cause "and therefore technically violated the MPJA," it also found:

> [I]t is clear that Officer Beltz was not on a "fishing expedition" and his intrusion into another jurisdiction was minimal. Officer Beltz received information of a potentially intoxicated driver in his jurisdiction who posed a risk to public safety. In response, Officer Beltz immediately sought out to trail the intoxicated driver, who had just left a business located within his jurisdiction, and soon thereafter found [Appellant] not far outside of his jurisdiction. He responded to no other calls during the pursuit of the intoxicated driver and did not engage in any other police business. This deviation from the letter and

spirit of the MPJA was minimal and intended to protect the public.

Trial Ct. Op., 5/3/13, at 3.

We likewise reject Appellant's allegation that Officer Beltz was on "a fishing expedition" or acted in "bad faith." **See** Appellant's Brief at 36. Instead, we agree with the trial court that Officer Beltz's actions were undertaken in the interest of promoting public safety, namely, stopping an intoxicated person from driving. **See Hilliar**, 943 A.2d at 991-92. Although the officer did not see Appellant's car until he had left his own jurisdiction, the total distance the officer travelled was relatively short. Officer Beltz testified that it was approximately 3,000 feet from Sheetz to the borough border, and another half mile to Zion Road,[11] which the officer knew led to the home address of the vehicle's registered owner. Accordingly, we agree with the trial court that Officer Beltz's violation of the MJPA was minimal.

We further agree with the trial court that Appellant "suffered minimal prejudice." Trial Ct. Op., 5/3/13, at 3. The court opined:

> Had Officer Beltz located [Appellant] within his jurisdiction, Officer Beltz clearly would have had reasonable suspicion to initiate a valid traffic stop based on the identified citizen's report to 911. **See e.g. Commonwealth v. Anthony**, 977 A.2d 1182, 1187 (Pa. Super. [ ] 2009) (stating that, "[t]o have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including tips from citizens"[.)] Additionally, had Officer Beltz contacted the State Police after traveling

---

[11] We note that 3,000 feet is 0.568 miles.

> outside of his jurisdiction as required by the MJPA, the result of [Appellant's] detention and subsequent arrest for driving under the influence would have been identical.

Trial Ct. Op., 5/3/13, at 3.

On appeal, Appellant avers that Officer Beltz's actions caused him "substantial prejudice." Appellant's Brief at 33, 36. However, his sole explanation of the alleged prejudice is that he "would not have received charges if Ptl. Beltz followed the MPJA." *Id.* at 36. In light of the policy of the MJPA, we decline to grant relief on this rationale. *See Hilliar*, 943 A.2d at 992 ("Like some scene out of the movie *Smokey and the Bandit*, Appellant would have this Court hold that law enforcement officers should step on the brakes at the borough line and watch the suspected criminal drive away on safe ground. . . . The MPJA was not enacted to afford criminals or drunk drivers this protection."). For all the foregoing reasons, we do not disturb the trial court's conclusion that in this case, suppression was not warranted.

We address Appellant's next two issues together. First, he challenges the sufficiency of the evidence for DUI-refusal. He avers the Commonwealth failed to produce evidence showing he "either was afforded a meaningful opportunity to consent to a chemical test, or in fact refused." Appellant's Brief at 40. He claims that the video played at trial showed Officer Beltz reading the warning in the "DL-26 form" and then "immediately reading the statement to certify he was provided meaningful opportunity to the motorist

for a response." *Id.* at 40-41. Appellant maintains that in the video, he "rises during the statement after the warnings are read and the video ends thereafter." *Id.* at 41. Appellant describes his "standing up" as "ambiguous enough that Ptl. Beltz should have attempted to determine if the action was a response, a refusal, or consent to testing." *Id.* at 43.

In his next issue, Appellant challenges the weight of the evidence for DUI-refusal.[12] He cites Officer Beltz's trial testimony that Appellant stood up "during the reading of the DL-26 and 'basically made a threatening move,'" but points out that the officer "did not testify that he considered this a refusal." *Id.* at 49. He again maintains that no evidence was presented showing that refused chemical testing by actions or words. *Id.* at 50. We hold no relief is due.

Subsection 1547(a) of the Motor Vehicle Code, also known as the implied consent law, sets forth a general rule that any person who operates a motor vehicle "shall be deemed to have given consent to" a chemical test to determine blood alcohol content or the presence of a controlled substance "if a police officer has reasonable grounds to believe the person" has violated Section 3802, DUI. 75 Pa.C.S. § 1547(a); *see Commonwealth v. Olsen*,

---

[12] This issue is preserved for appeal, as Appellant raised it in his post-sentence motion. *See* Pa.R.Crim.P. 607(A)(1)-(3) (requiring claim that verdict was against weight of evidence to be raised with trial judge in motion for new trial orally any time before sentencing, by written motion any time before sentencing, or in post-sentence motion).

82 A.3d 1041, 1046 (Pa. Super. 2013).

Subsection 1547(b)(1) provides in pertinent part that if any person arrested for a DUI violation under Section 3802 refuses to submit to chemical testing, "the testing shall not be conducted" and the Department of Motor Vehicles shall suspend the person's operating privileges for a prescribed duration of time. 75 Pa.C.S. § 1547(b)(1). Subsection 1547(b)(2) provides,

> (2) It shall be the duty of the police officer to inform the person that:
>
> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
>
> (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547(b)(2)(i)-(ii). This Court has explained:

> Thus, pursuant to the implied consent law, any person who drives a vehicle and refuses a request for a blood draw, when such request is predicated upon reasonable grounds to believe that the driver was driving under the influence of alcohol, will be sentenced to the enhanced penalties codified at 75 Pa.C.S. § 3804(c). That section states, in pertinent part, as follows:
>
> **Incapacity; highest blood alcohol; controlled substances.**—An individual who violates section 3802(a)(1) and refused testing of blood or breath . . . shall be sentenced as follows:
>
> * * *
>
> (3) for a third or subsequent offense, to:

> (i) undergo imprisonment of not less than one year;
>
> (ii) pay a fine of not less than $2,500; and
>
> (iii) comply with all drug and alcohol treatment requirements under sections 3814 and 3815.

> 75 Pa.C.S. § 3804(c)(3).

*Olsen*, 82 A.3d at 1046-47.

We set forth the standard of review for a sufficiency of the evidence claim:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Id.* at 1046 (citation omitted).

We note that in reviewing a weight of the evidence challenge:

> In assessing the trial court's ruling, we must "review[ ] the trial court's exercise of discretion, not the underlying question of whether the verdict is against the weight of the

- 14 -

evidence." The fact-finder is free to believe all, part, or none of the evidence; an appellate court will not make its own assessment of the credibility of the evidence. "The trial court will only award a new trial when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." In turn, we will reverse a trial court's refusal to award a new trial only when we find that the trial court abused its discretion in not concluding that the verdict was so contrary to the evidence as to shock one's sense of justice. In effect, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings."

*Id.* at 1049 (citations omitted).

We note that our Commonwealth Court has stated,[13]

In order to sustain a suspension of operating privileges under section 1547 of the Code, DOT must establish that: (1) the licensee was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating a motor vehicle while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test; (3) the licensee refused to submit; and (4) the licensee was warned that refusal would result in a license suspension. In proving whether a licensee refused to submit to chemical testing, **DOT has the burden of showing that the licensee was offered a meaningful opportunity to comply with section 1547** of the Code. Once DOT satisfies its burden, the licensee must establish that the refusal was not knowing or conscious or that the licensee physically was unable to take the test.

---

[13] "We note that '[t]his Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate.'" ***Lockley v. CSX Transp., Inc.***, 66 A.3d 322, 326 n.5 (Pa. Super. 2013), *appeal denied*, 74 A.3d 127 (Pa. 2013) (citation omitted). Appellant relies on ***Broadbelt*** and related Commonwealth Court decisions. Appellant's Brief at 41-42, 44-45.

***Broadbelt v. DOT, Bureau of Driver Licensing***, 903 A.2d 636, 640 (Pa. Cmwlth. 2006) (citations omitted) (emphasis added).

In ***Olsen***, a police officer arrested the defendant for DUI and was transporting her to the hospital for blood alcohol testing. ***Olsen***, 82 A.3d at 1044. During the ride, the defendant

> began to get loud, was screaming and continued on a vulgar tirade about law enforcement and about [the officer] specifically. [The officer] described that he "couldn't get a word in edgewise." [He] did attempt to read the chemical testing warnings from the DL-26 Form, but it was clear that [the defendant] was not paying attention and was on a "vulgar tirade." Although [the officer] did not actually read very much of the DL-26 Form, he read the beginning of the form and only abandoned the effort after it was clear that [the defendant's] behavior would not permit him to finish. [The officer abandoned his effort to take [the defendant] into the hospital for a blood draw, and instead [drove] towards the [p]olice [d]epartment in order to have [the defendant] processed on the DUI charge.]

***Id.*** at 1044-45.

On appeal from her conviction of DUI, the defendant challenged the sufficiency and weight of the evidence for the jury's determination that she refused chemical testing under Section 1547. ***Id.*** at 1045, 1049. This Court noted, "[W]hen the arresting officer attempts to administer the warnings, but the arrestee's unruly and disruptive behavior prohibits the officer from completing the recitation, the arrestee will be deemed to have refused the blood draw." ***Id.*** at 1049 (citing ***Commonwealth v. Xander***, 14 A.3d 174, 179 (Pa. Super. 2011)). The Court cited the Commonwealth's evidence that

the officer had "attempted to read the § 1547(b) warnings to" the defendant, but the defendant "ignored [the officer's] attempts and instead continued her 'vulgar tirade' against the police, preventing [him] from completing the warnings." *Olsen*, 82 A.3d at 1048. This Court thus held the "evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that [the defendant] had knowingly refused the blood draw." *Id.* With respect to the weight of the evidence, the Court reasoned that the jury, as the finder of fact, "was in the best position to view the demeanor of the Commonwealth's witnesses and to assess each witness' credibility." *Id.* at 1049. The jury found the officer's account of events credible. *Id.* Accordingly, this Court reasoned, the trial court's determination that the defendant's verdict did not shock its conscience was supported by the record. *Id.*

In the instant case, Officer Beltz testified at trial that he read the DL-Form 26 verbatim to Appellant. N.T. Trial, 12/4/12, at 44. The officer further testified: "When I asked [Appellant] if he would submit to chemical testing, he jumped up out of his seat and basically made a threatening move towards me." *Id.* at 45. As stated above, the Commonwealth played a video depicting the reading of DL-Form 26 to Appellant. *Id.* at 72.

Appellant's argument that he merely rose and that his "physical action was ambiguous," *see* Appellant's Brief at 41, requires this Court to discredit the officer's testimony and supplant the jury's findings with our own. This

we cannot do. *See Olsen*, 82 A.3d at 1049. Furthermore, we note the trial court instructed the jury that it "could find that there was a refusal either in words or by uncooperative conduct after examining all the surrounding facts and circumstances." Trial Ct. Op., 3/28/13, at 10. This language comports with the Pennsylvania Suggested Standard Jury Instruction.[14] Appellant did not object to this instruction at the time it was given or at the conclusion of all the instructions. *See* N.T. Trial, at 100, 107. In light of all the foregoing, we do not disturb the trial court's determination that the jury's verdict does not shock its conscience. *See Olsen*, 82 A.3d at 1049. We rely on the same reasoning to deny relief on Appellant's sufficiency of the evidence claim.

Before reviewing Appellant's final argument, concerning the merger of sentences, we note the following statutory authority. Section 3802 of the Vehicle Code defines DUI/general impairment as follows:

---

[14] Suggested Standard Criminal Jury Instruction 17.6502C states:

> 1. The Commonwealth contends that the defendant refused to give a sample of [[his] [her]] [[blood] [urine]] for testing. A person can express "refusal" in words, or he or she can demonstrate "refusal" by uncooperative conduct. You should consider everything said and done by the [police] [official] and the defendant, and all the surrounding circumstances, at the time of the alleged refusal when determining whether the defendant did in fact refuse to give the sample. [If a person refuses, that initial refusal can still be regarded as a refusal even if he or she later offers a sample for testing.]

Pa. SSJI (Crim) 17.6502C(1).

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

Section 3733(a) defines the offense of fleeing or attempting to elude a police officer as follows:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa.C.S. § 3733(a).  Subsection 3733(a.2) sets forth the grading of this offense:

> (1) Except as provided in paragraph (2), an offense under subsection (a) constitutes a misdemeanor of the second degree.  . . .
>
> (2) An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:
>
> (i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance)[.]

75 Pa.C.S. § 3733(a.2)(1), (2)(i).

In the instant appeal, Appellant argues that the trial court erred in holding his DUI and DUI with refusal convictions did not merge with his F3 fleeing conviction.  He points out that while fleeing is generally graded as an M2, if an individual commits fleeing while also committing DUI, fleeing is

then graded as an F3. **See** 75 Pa.C.S. § 3733(a.2)(2)(i). Appellant thus reasons that "in order for a jury to convict a defendant of [fleeing] as a third degree felony, [it] must find beyond a reasonable doubt that each and every element of [DUI] was committed at the same time." Appellant's Brief at 18. In support, Appellant maintains that "the verdict slip required the jury to determine whether a violation of § 3802 occurred while a violation of § 3733 occurred." **Id.** Appellant also challenges the trial court's reasoning that a commission of DUI was not an element of fleeing, but was "rather a matter of grading." **Id.** He avers instead that under **Apprendi v. New Jersey**, 530 U.S. 466 (2000), "an element of an offense is any fact which the jury must find beyond a reasonable doubt in order to convict the defendant of the offense." **Id.** Appellant accordingly urges this Court to find that the offenses merged. We agree.

Pennsylvania's merger doctrine is codified at section 9765 of the Sentencing Code:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. "As our Supreme Court has explained, the 'mandate of [Section 9765] is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory

elements of the other.'" ***Commonwealth v. Tanner***, 61 A.3d 1043, 1046 (Pa. Super. 2013) (citation omitted). "Whether . . . convictions merge for sentencing is a question implicating the legality of [a] sentence. Consequently, our standard of review is de novo and the scope of our review is plenary." ***Id.*** at 1046.

Our review of relevant decisional authority has not revealed a discussion on whether the crimes of fleeing-F3 and DUI merge. However, we find guidance in ***Tanner***. In that case, the defendant pleaded guilty to homicide by motor vehicle while DUI, aggravated assault by vehicle while DUI, and DUI—highest rate of alcohol.[15] ***Id.*** at 1045. The trial court imposed sentences at all three counts, to be served consecutively. ***Id.*** On appeal, this Court *sua sponte* reviewed whether the DUI conviction merged with the convictions for homicide by motor vehicle while DUI and aggravated assault by vehicle while DUI. ***Id.*** at 1046. This Court considered the following.

The Vehicle Code defines homicide by vehicle while DUI as follows: "Any person who unintentionally causes the death of another person as the result of a violation of . . . section 3802 (relating to [DUI]) and who is convicted of violating section 3802 is guilty of a felony of the second degree when the violation is the cause of the death[.]" ***Id.*** at 1046 (quoting 75

---

[15] 75 Pa.C.S. §§ 3735(a), 3735.1(a), 3802(c).

Pa.C.S.A. § 3735(a)). Aggravated assault by vehicle while DUI is defined as follows: "Any person who negligently causes serious bodily injury to another person as the result of a violation of . . . section 3802 (relating to [DUI]) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury." *Tanner*, 61 A.3d at 1046 (quoting 75 Pa.C.S.A. § 3735.1(a)).

The *Tanner* Court considered that all of the defendant's charges arose from a single criminal act. *Tanner*, 61 A.3d at 1047. It found that

> "all of the statutory elements of [the crime of DUI] are included in the statutory elements of" the crimes of homicide by motor vehicle while DUI and aggravated assault by vehicle while DUI. Indeed, the crimes of homicide by motor vehicle while DUI and aggravated assault by vehicle while DUI require, as essential elements, that an individual cause the proscribed harm "as a result of" violating the DUI statute and that the individual be convicted of DUI. Therefore, the statutory elements of DUI are completely subsumed within the crimes of both homicide by motor vehicle while DUI and aggravated assault by vehicle while DUI. As such, for sentencing purposes, [the] DUI conviction merged with both [the] homicide by motor vehicle while DUI and aggravated assault by vehicle while DUI convictions.

*Id.* (citations omitted).

In the case *sub judice*, the trial court further reasoned that the legislative intent for the fleeing-F3 subsection was to increase sentencing for fleeing when it is committed during a DUI, and not to merge the two crimes for sentencing purposes. Trial Ct. Op., 3/28/13, at 8. We respectfully

disagree, and instead hold that the rationale in **Tanner** applies.[16] Fleeing-F3 includes the element of committing DUI, 75 Pa.C.S. § 3733(a.2)(2)(i), similar to homicide by vehicle while DUI and aggravated assault while DUI. 75 Pa.C.S. §§ 3735(a), 3735.1(a). Accordingly, we hold that DUI merges with fleeing-F3, and the court's imposition of sentences on both counts was illegal. Our disposition disturbs the court's overall sentencing scheme, and we therefore "vacate Appellant's judgment of sentence in its entirety and remand for resentencing." **See Olsen**, 61 A.3d at 1048.

Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Allen, J. files a concurring and dissenting opinion.

---

[16] We thus also respectfully disagree with the dissent's reasoning that **Commonwealth v. Everett**, 705 A.2d 837 (Pa. 1998), applies to control that the two offenses in the instant matter do not merge. In **Everett**, the defendant's aggravated assault conviction was graded as a first degree-felony and attempted murder conviction was a second degree-felony. **Id.** at 838 n.1, 839. The issue before our Supreme Court was not whether these two offenses merged; the Court cited **Commonwealth v. Anderson**, 650 A.2d 20 (Pa. 1994), which held they did. **Everett**, 705 A.2d at 838-39 ("We held that 'the offense of aggravated assault is necessarily included within the offense of attempted murder[.']"); **but see Commonwealth v. Coppedge**, 984 A.2d 562, 564 (Pa. Super. 2009) (noting 2003 merger statute, 42 Pa.C.S. § 9765, superseded prior common law decisions, including **Anderson**). Instead, the issue before the **Everett** Court was whether a court was required to sentence on the greater offense and not the lesser offense. **Id.** at 838. The passage quoted by the dissent was the Court's rejection of such a claim—that "[i]t would be absurd to use the merger doctrine to find" the legislature intended that a lesser maximum sentence "should control." **Id.** at 839.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/29/2014</u>