J-A29036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                             :               PENNSYLVANIA
                                     :

               v.                         :
                                     :
                                     :

LANYERE AYERS ROCKAMORE      :
                                     :

           Appellant               :      No. 786 WDA 2019

Appeal from the Judgment of Sentence Entered April 18, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0002064-2017

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED JANUARY 2, 2020**

Lanyere Ayers Rockamore (Rockamore) appeals from the judgment of

sentence entered on April 18, 2019, by the Court of Common Pleas of Fayette

County (trial court) following his convictions for aggravated assault, simple

assault, disorderly conduct and harassment.[1] Rockamore raises challenges to

the sufficiency and weight of the evidence and the discretionary aspects of his

sentence. We affirm.

**I.**

We glean the following facts from the certified record of the non-jury

trial. On January 14, 2017, Rockamore was an inmate at SCI-Fayette serving

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(2), 2701(a)(1), 5503(a)(1), 2709(a)(1).

a 20 to 40 year sentence for attempted homicide. He had completed almost 19 years of his sentence and was preparing for an impending parole hearing.

Rockamore's unit in the prison was on lockdown and he was not permitted to leave his floor. However, when he was released from his cell to take a shower, he went down the steps to the lower floor. Corrections officer Keith Graft (Officer Graft) ordered Rockamore to stay upstairs. Rockamore disregarded the order and proceeded downstairs where he pulled an object out of his waistband and slipped it through the hole in another inmate's cell door. It was against policy for inmates to pass objects in this manner and Officer Graft ordered Rockamore to stop and reached for his radio to contact his sergeant for assistance.

Before Officer Graft could call for help, Rockamore grabbed him by the shirt and struck him in the face. (Notes of Testimony, Non-Jury Trial ("N.T."), 3/27/19, at 12). They began to struggle and Rockamore held him in a headlock. *Id.* He pushed Officer Graft under the staircase and Officer Graft hit the back of his head on a steel beam. (N.T. at 13, 44, 136). Rockamore continued to strike Officer Graft and pushed him against a wall before other corrections officers were able to respond. (N.T. at 14, 136). Officers then used pepper spray to subdue him. (N.T. at 14-15).

At trial, the Commonwealth introduced a surveillance video that had captured a portion of the interaction. The camera, which was operated manually by a corrections officer in the control room, was not recording the

relevant part of the prison when the altercation began. (N.T. at 29). The video begins with Rockamore holding Officer Graft against the wall and shows the other officers subduing him. It does not depict the portion of the altercation when Officer Graft's head hit the steel beam.

Officer Graft was first seen by medical personnel at SCI-Fayette and then went to the hospital for further treatment. He had a lump on the back of his head, bruising on his back, neck pain, scratches, and a concussion. He attended vision and concussion therapy for three to four months after the incident and underwent surgery to repair a herniated disc in his neck. As of the trial date, he had not been medically cleared to return to work.

Rockamore testified on his own behalf and contradicted Officer Graft's version of events. Prior to the incident, he had never seen Officer Graft in the prison and had never had any altercations with a corrections officer. (N.T. at 105). He believed the lockdown was over and Officer Graft allowed him to go downstairs to shower. (N.T. at 106). He had promised to give another inmate tobacco so he passed the tobacco through the hole in the inmate's cell door before going to the shower. (N.T. at 107-08). Officer Graft did not stop him from coming down the steps or walking over to the other inmate's cell. (N.T. at 110, 121). Rockamore testified that Officer Graft then approached him and

asked him if he had anything in his shorts. (N.T. at 112). Officer Graft attempted to reach inside his waistband.[2] (N.T. at 112).

Rockamore said that when he instinctively pulled away, Officer Graft grabbed his arm and tried to hit his head. (N.T. at 112-13). Officer Graft attempted to hit him again, so Rockamore grabbed him and they became entangled. (N.T. at 113-14). According to Rockamore, the camera began filming the incident after Officer Graft attacked him and only began recording after the fight had already escalated. *Id.* Rockamore denied pushing Officer Graft's head into a metal beam, putting him in a headlock or striking him with his fist or forearm. (N.T. at 114-15, 130).

Rockamore was found guilty of all charges. (N.T. at 156). Following a presentence investigation, the trial court sentenced Rockamore in the mitigated range to 5 to 10 years' incarceration to be served concurrently to his sentence for attempted homicide. (Notes of Testimony, Sentencing Hearing ("S.H."), 4/18/19, at 12-13). Rockamore filed a timely post-sentence motion, which the trial court denied, and a timely notice of appeal. Both the trial court and Rockamore have complied with Rule of Appellate Procedure 1925.

---

[2] Officer Graft denied that he reached toward Rockamore's waistband at any point during the interaction. (N.T. at 145).

**II.**

Rockamore first challenges the sufficiency of the evidence to support his convictions for aggravated assault, simple assault, disorderly conduct and harassment.[3] A person is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) . . . while in the performance of duty."[4] 18 Pa.C.S. § 2702(a)(2). A person

_____

[3] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

[4] It is undisputed that corrections officers such as Officer Graft are protected persons under subsection (c) of the statute. 18 Pa.C.S. § 2702(c)(9).

is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1). A person commits the crime of disorderly conduct, graded as a third-degree misdemeanor, if he "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . engages in fighting or threatening, or in violent or tumultuous behavior," and he intends to "cause substantial harm or serious inconvenience, or he persists in disorderly conduct after reasonable warning or request to desist." 18 Pa.C.S. § 5503(a)(1), (b). Finally, a person commits harassment when "with intent to harass, annoy or alarm another, the person . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa.C.S. § 2709(a)(1).

Rockamore argues that the evidence adduced at trial was so inconsistent and contradictory that the verdict constituted mere guesswork or conjecture such that, as a matter of law, the evidence could not have established each element of the crimes beyond a reasonable doubt. *See Commonwealth v. Thomas*, 561 A.2d 699, 704 (Pa. 1989). He argues that the evidence cannot be considered sufficient to sustain his convictions "if his guilt of the crime charged is not the only reasonable interpretation of which the facts adduced against him are susceptible." *Commonwealth v. Wong Knee New*, 47 A.2d 450, 455 (Pa. 1946); *see* Rockamore's Brief at 24-26. Based on the inconsistencies in Officer Graft's testimony, Rockamore argues that the

Commonwealth did not prove that that he possessed the requisite *mens rea* to commit the offenses or even that he committed the assault as described by Officer Graft.[5]

As noted **supra**, this Court "will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient because the factfinder is free to believe all, part, or none of the evidence." **Commonwealth v. Lineman**, 1326 EDA 2018, at *2 (Pa. Super. Sept. 16, 2019) (internal quotations and citations omitted). Moreover, the Commonwealth may rely on circumstantial evidence to prove intent or any other element of an offense. **Thomas**, **supra**.

Viewing the evidence in the light most favorable to the Commonwealth, the record clearly supports Rockamore's convictions. Officer Graft testified that Rockamore struck him in the face, grappled with him and held him in a headlock. (N.T. at 12). Rockamore then forcefully pushed Officer Graft under

---

[5] Rockamore contends that **Commonwealth v. Eady**, 876 WDA 2017 (Pa. Super. May 9, 2018) (non-precedential decision), is analogous. There, we vacated the appellant's convictions for third-degree murder and related offenses upon finding that the verdict was based on weak and inconclusive evidence. **Id.** at *4-5. However, **Eady** was an unpublished memorandum decision issued in 2018, and our Rules of Appellate Procedure allow us to rely on non-precedential opinions for their persuasive value only when the decision was issued after May 1, 2019. **See** Pa.R.A.P. 126(b).

the staircase, causing Officer Graft to hit the back of his head on a steel beam. (N.T. at 13, 44). Rockamore continued to strike him and the corrections officers responding to the scene needed pepper spray to subdue him. (N.T. at 14-15). This testimony was corroborated in part by the surveillance video that captured the latter part of the incident. As a result of the attack, Officer Graft sustained numerous serious injuries, including a concussion and a herniated disc in his neck that required surgery. (N.T. at 18-20, 88).

These facts are sufficient to establish that Rockamore intentionally struck Officer Graft while he was working as a corrections officer and caused him to suffer serious bodily injury, supporting his convictions for both aggravated and simple assault. 18 Pa.C.S. § 2702(a)(2), (c)(9); § 2701(a)(1). Moreover, he intentionally engaged in violent behavior in the prison, causing alarm when numerous officers had to respond to the scene, and refusing to desist until he was subdued with pepper spray. Thus, his conviction for disorderly conduct is well-supported by the record. **See** 18 Pa.C.S. § 5503(a)(1), (b). Finally, Rockamore struck Officer Graft under circumstances that support an inference that he intended to harass or alarm him, supporting his conviction for harassment. **See** 18 Pa.C.S. § 2709(a)(1).

To the extent that Rockamore's recounting of events differs from Officer Graft's, the trial court sitting as fact-finder was entitled to credit Officer Graft's testimony over Rockamore's. **Lineman**, **supra**. While Rockamore contends that the video of the fight did not show the beginning of the altercation and is

not a reliable accounting of what transpired, this argument neglects to acknowledge that the video was not necessary to sustain the convictions.

A victim's testimony, when it establishes all elements of the crime beyond a reasonable doubt, can be sufficient to support a criminal conviction. ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018). Video can certainly aid in the truth-determining process, but where there is no video of relevant events the fact-finder must rely on testimony or other forms of evidence to reach a verdict. The video in this case clearly depicts Rockamore pinning Officer Graft against the wall and then grappling with him until he is subdued by other corrections officers. Further, the trial court credited Officer Graft's testimony that the altercation began with Rockamore hitting him in the face and pushing the back of his head into a steel beam. (N.T. at 12-14, 44). These facts are sufficient to support Rockamore's convictions and his first claim is meritless.

## III.

Next, Rockamore contends that his convictions were against the weight of the evidence and that the trial court abused its discretion by denying his motion for a new trial.[6] Rockamore points to the discrepancies in Officer

---

[6] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. ***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents

Graft's testimony and argues that his own testimony was more credible. He asserts that it is implausible that a model inmate who was approaching his minimum sentence date would put his parole in jeopardy by assaulting a guard. He also faults the trial court for stating that his behavior was reckless at the end of trial but later describing it as intentional.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). However, a new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Akhmedov*, 3443 EDA 2015, at \*26 (Pa. Super. July 29, 2019) (*en banc*) (citation omitted). In evaluating the verdict, this Court does not independently assess the credibility of the evidence, as this is purely within the province of the fact-finder. *Olsen*, *supra*.

---

not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted). A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." *Id.* (citation omitted).

The trial court, sitting as fact-finder, determined that the verdict did not shock its conscience and was not against the weight of the evidence. After a thorough review of the testimony, particularly that of Officer Graft, and the corroborating video, we find that the trial court's credibility determinations were well within its discretion as fact-finder and not shocking to the conscience. Any discrepancies in Officer Graft's accounting of events were minor and easily attributable to the quick and confusing nature of the attack.[7] Further, the surveillance video presented at trial clearly depicts Rockamore grappling with Officer Graft and holding him against the wall. A nurse who examined Officer Graft immediately after the attack confirmed that he had suffered numerous injuries, including a large lump on the back of his head. Under these circumstances, the trial court did not abuse its discretion in finding that the verdict did not shock its conscience and Rockamore's challenge to the weight of the evidence is meritless.

**IV.**

Finally, Rockamore challenges the discretionary aspects of his sentence. Rockamore was sentenced to 5 to 10 years' incarceration concurrent to the sentence he is serving for attempted homicide. "The right to appellate review

---

[7] For example, Officer Graft initially testified that he was first struck on the right side of his face, but on cross-examination stated that Rockamore hit the left side of his face. (N.T. at 12, 34). Additionally, Rockamore criticizes the reliability of the video because it did not record a headlock or Officer Graft's head hitting the steel beam.

- 11 -

of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, and include a statement of reasons for allowance of appeal pursuant to Rule of Appellate Procedure 2119(f) in his brief, and raise a substantial question for review. ***Id***. Rockamore fulfilled the first three requirements by filing a timely post-sentence motion, a timely notice of appeal, and including a 2119(f) statement in his brief.[8]

Thus, we turn to whether Rockamore has raised a substantial question for review. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

---

[8] We note that Rockamore's 2119(f) statement is nearly identical to the argument portion of his brief addressing his sentencing issue. ***See*** Rockamore's Brief at 6-13, 51-58. This is improper. The purpose of the 2119(f) statement is to present a substantial question for review to invoke this Court's jurisdiction to decide the merits of the sentencing claim. ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa. Super. 2018). This Court does not examine the underlying facts or the merits of the sentencing argument in determining whether a substantial question was presented. ***Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*). Nevertheless, since we are able to discern Rockamore's position regarding the substantial question, we decline to find waiver.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). Rockamore contends that the trial court imposed a manifestly excessive sentence under the circumstances without considering mitigating factors, such as his exemplary record in prison and the trial court's surprise at the extent of the injuries Officer Graft suffered in the attack. This claim presents a substantial question for our review. *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075-76 (Pa. Super. 2019) (citations omitted).[9]

Moving on to the merits of Rockamore's claim, the standard range of the sentencing guidelines for aggravated assault is a minimum of 72 to 84 months of incarceration, with a mitigated range sentence of 60 months. (S.H. at 8-9). When reviewing the discretionary aspects of a sentence that falls within the sentencing guidelines, we must affirm unless "application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). When imposing a sentence, a trial court must ensure that the sentence is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Finally, "[w]here the

_____

[9] Rockamore also contends that the trial court abused its discretion in imposing the sentence effective on the date of sentencing (April 18, 2019) rather than on the date of the incident itself (January 14, 2017). He cites no law supporting his contention that a challenge to the effective date of the sentence raises a substantial question for our review and we have not uncovered any through our research. Thus, this claim does not present a substantial question.

sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." **Commonwealth v. Hill**, 210 A.3d 1104, 1117 (Pa. Super. 2019) (internal quotations & citation omitted).

The record reflects that the trial court was aware of the mitigating evidence placed on the record and, in fact, considered that evidence when it elected to sentence Rockamore in the mitigated range of the sentencing guidelines. (S.H. at 6-7, 12, 14). The trial court ordered and reviewed a PSI prior to sentencing. (S.H. at 8, 10). The trial court noted that the attack was not premeditated, that Rockamore did not intend to cause the severe injuries that resulted, that he had already spent a significant amount of time in prison, and that he had not committed any other crimes during his incarceration. (S.H. at 7-8, 12). The trial court recognized that Officer Graft sustained serious injuries but specifically stated that it felt a standard range sentence of a minimum of 7 years would be excessive. (S.H. at 8-9). Based on all of these factors, the trial court imposed a mitigated range sentence of 5 to 10 years' incarceration to be served concurrently to Rockamore's 1999 sentence. Under all of these circumstances, the sentence is not clearly unreasonable and the trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2020