**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Teresa Marie OLSEN, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 21, 2013.
Filed Dec. 16, 2013.

Kathleen J. Boyer, Public Defender, West Chester, for appellant.

Erik T. Walschburger, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: SHOGAN, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Teresa Olsen ("Appellant") appeals from the September 26, 2012 judgment of sentence, which was imposed after Appellant was convicted by a jury of, *inter alia,* driving under the influence of alcohol ("DUI"), 75 Pa.C.S. § 3802(a)(1), her third DUI offense. We affirm.

The record supports the following account of the events underlying this case. At approximately 3:20 p.m. on June 10, 2011, Kimberly McKinley ("McKinley") was stopped at a traffic signal on Sheree Boulevard in Chester County, Pennsylvania, when a white Toyota Highlander SUV approached her vehicle on the left hand side. When the light turned green, McKinley drove off, traveling at the posted speed limit. The Highlander, moving at a speed considerably above the speed limit, passed McKinley's vehicle and disappeared around a curve in the road. The vehicle came back into McKinley's view at the intersection of Sheree and State Route 113. McKinley noticed that the Highlander's driver's side front tire was flat. The Highlander slowed down and started to roll towards a stop on the berm of the road. McKinley observed the driver, later determined to be Appellant, exit the vehicle. The Highlander started to roll again, and eventually came to a stop on its own. McKinley observed Appellant wobble as she walked away from the car and headed toward a nearby CVS pharmacy. Due to the location of the vehicle on a heavily traveled road, the fact that the vehicle moved on its own after Appellant had exited, and Appellant's demeanor upon her exit from the vehicle, McKinley called 911 and alerted the authorities about what she had observed.

April Neville ("Neville") was on duty as the manager of the CVS pharmacy when Appellant stumbled into the store on June 10, 2011. Neville was called to the front desk to assist Appellant in making a phone call. Appellant attempted to dial a phone number, but the telephone's screen indicated that Appellant had merely dialed 8–8–8. Neville became concerned about Appellant's overall well-being after Appellant informed Neville that "someone beat the dog shit out of [me] in the parking lot." Neville offered to call the police, but Appellant refused, claiming that she disliked the police that worked in that area. Neville observed Appellant acting erratically. For

* Retired Senior Judge assigned to the Superior Court.

example, Appellant provided Neville with Appellant's husband's phone number and then walked out of the store, leaving Neville to speak with Appellant's husband. Neville retreated to her office to grab her cell phone. When she returned to the front of the store, Appellant had returned and was yelling at the cashier. Neville then asked Appellant to leave the store. After Appellant exited, Neville contacted the police.

Sergeant Dale McClure and Officer Matthew Gale of the Uwchlan Township Police Department responded to these reports and found Appellant in the CVS parking lot. Sgt. McClure noticed that Appellant spoke with a slur and walked with a staggering gait. Upon being questioned, Appellant admitted that she had consumed one alcoholic drink earlier in the day. Appellant submitted to a portable breath test, which indicated the presence of alcohol. Appellant then failed two field sobriety tests, after which Sgt. McClure arrested Appellant on suspicion of DUI.

Appellant initially consented to be taken to a local hospital to have her blood drawn and tested for the presence of alcohol. The trial court summarized the sequence of events that followed Appellant's arrest as follows:

Sergeant McClure attempted to provide [Appellant] with the required [75 Pa.C.S. § 1547 warnings regarding the enhanced penalties for refusing a blood test], and only abandoned the effort because of [Appellant's] extremely uncooperative behavior. Specifically, after placing [Appellant] under arrest for driving under the influence of alcohol or a controlled substance, McClure asked [Appellant] if she was willing to go to the hospital for a blood test, at which point [Appellant] was willing to take the test. As McClure began driving to the hospital, [Appellant] was cooperative and asked some general questions about the procedure and how long it would take to get to the hospital. During the drive to the hospital, the conversation with [Appellant] ceased and she was observed asleep in the patrol car. When McClure was about two blocks from the hospital, [Appellant] awoke and asked where they were. McClure informed her that they were a couple of blocks from the hospital. At this point, [Appellant] began to get loud, was screaming and continued on a vulgar tirade about law enforcement and about McClure specifically. McClure described that he "couldn't get a word in edgewise." McClure did attempt to read the chemical testing warnings from the DL–26 Form, but it was clear that [Appellant] was not paying attention and was on a "vulgar tirade." Although McClure did not actually read very much of the DL–26 Form, he read the beginning of the form and only abandoned the effort after it was clear that [Appellant's] behavior would not permit him to finish. [McClure abandoned his effort to take Appellant into the hospital for a blood draw, and instead turned his patrol vehicle around and began to drive towards the West Whiteland Police Department in order to have Appellant processed on the DUI charge.]

In fact, after leaving the hospital [and on the way to the police station, Appellant] continued in her outrageous behavior requiring McClure to pull over his police car because [Appellant's] tirade continued and she was kicking at the right rear door window of the police cruiser. During this time, [Appellant] yelled, cursed and screamed. She eventually kicked the patrol vehicle window out of its frame. After McClure pulled the patrol vehicle over and back-up officers arrived, [Appellant] was placed in leg-shackles. A West Whiteland patrol car

that had arrived at the scene began recording the interaction with [Appellant]. Commonwealth's exhibit 8, the MVR recording from the West Whiteland patrol car, was presented, wherein the jury observed [Appellant's] behavior after McClure pulled over his police car. [Appellant] is observed to be in a vulgar tirade, screaming and spitting on police officers, similar behavior to, and visually corroborative of, that described by McClure while he attempted to read [Appellant] her chemical testing warnings. [Appellant's] behavior was outrageous and uncontrollable.

Trial Court Opinion ("T.C.O."), 1/14/2013, at 3–5.

At the conclusion of trial, the jury found Appellant guilty of DUI, criminal mischief, 18 Pa.C.S. § 3304(a)(5), and resisting arrest, 18 Pa.C.S. § 5104. Furthermore, the jury determined that Appellant had refused to submit to chemical testing of her blood, resulting in the sentencing enhancement set forth in 75 Pa.C.S. § 3804(c). On September 26, 2012, Appellant was sentenced to one to two years' incarceration, to be followed by two years of probation.

On October 8, 2012, Appellant filed post-sentence motions. With the trial court's permission, Appellant amended her post-sentence motions on December 12, 2012. In her post-sentence motions, Appellant challenged, *inter alia*, the weight and sufficiency of the evidence proffered by the Commonwealth to prove that Appellant had refused chemical testing of her blood. On January 3, 2013, the Commonwealth filed an answer and accompanying brief in opposition to Appellant's claims. On January 14, 2013, after reviewing all of the written materials, the trial court denied Appellant's post-sentence motions in an order. The trial court set forth its rationale supporting its order in an accompanying opinion.

On February 12, 2013, Appellant filed a notice of appeal. In response, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 5, 2013, Appellant timely complied. On March 12, 2013, the trial court issued a memorandum pursuant to Pa.R.A.P. 1925(a), wherein the trial court directed this Court to its January 14, 2013 opinion in support of its order denying Appellant's post-sentence motions.

Appellant raises five questions for our review:

1. Was the evidence sufficient to support the jury's verdict that [Appellant] refused chemical testing of her blood within the meaning of 75 Pa. C.S.A. § [§ ] 3804 and 3804(c)(3)?

2. Was the jury's verdict that [Appellant] refused testing of her blood against the weight of the evidence?

3. Did the fact that the jury never saw the "Chemical Testings Warnings" form (Commonwealth's Exhibit 5), which the arresting officer referenced in his testimony and the trial court admitted into evidence, deprive [Appellant] of due process?

4. Did the trial court err in instructing the jury that it could consider the evidence of [Appellant's] refusal to submit to the blood test as consciousness of guilt?

5. Did the trial court err in applying the mandatory sentencing enhancement of 75 Pa.C.S.A. § 3804(c)(3)?

Brief for Appellant at 3.

In her first issue, Appellant challenges the sufficiency of the evidence proffered by the Commonwealth to prove to the jury, beyond a reasonable doubt, that she had refused the chemical testing, and, thus, was subjected to the highest DUI-related penalties pursuant to 75 Pa.C.S.

§ 3804(c)(3). Our standard of review regarding challenges to the sufficiency of the evidence is well-settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley,* 14 A.3d 887, 889–90 (Pa.Super.2011) (quoting *Commonwealth v. Mollett,* 5 A.3d 291, 313 (Pa.Super.2010)).

As noted, Appellant contends that the Commonwealth failed to prove that she refused to submit to the blood test that was requested by Sgt. McClure. Because Appellant was driving a vehicle, she was subject to Pennsylvania's "implied consent" law, which provides as follows:

> [a]ny person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driver, operating or in actual physical control of the movement of a vehicle:
>
> > (1) in violation of ... 3802 (relating to driving under the influence of alcohol or controlled substance)....
>
> > \* \* \*
>
> **(a) Suspension for refusal.—**
>
> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
> > \* \* \*
>
> (2) It shall be the duty of the police officer to inform the person that:
>
> > (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
>
> > (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), **the person shall be subject to the penalties provided in section 3804(c)** (relating to penalties).

75 Pa.C.S. § 1547(b) (emphasis added).

Thus, pursuant to the implied consent law, any person who drives a vehicle and refuses a request for a blood draw, when such request is predicated upon reasonable grounds to believe that the driver was driving under the influence of alcohol, will be sentenced to the enhanced penalties codified at 75 Pa.C.S. § 3804(c). That section states, in pertinent part, as follows:

**Incapacity; highest blood alcohol; controlled substances.**—An individual who violates section 3802(a)(1) and refused testing of blood or breath . . . shall be sentenced as follows:

\* \* \*

(3) for a third or subsequent offense, to:

 (i) undergo imprisonment of not less than one year;

 (ii) pay a fine of not less than $2,500; and

 (iii) comply with all drug and alcohol treatment requirements under sections 3814 and 3815.

75 Pa.C.S. § 3804(c)(3).

Recently, in *Commonwealth v. Xander,* 14 A.3d 174 (Pa.Super.2011), this Court held that, before the enhanced penalties for refusal of chemical testing can apply to a DUI defendant, the arresting police officer first must have issued the implied consent warnings as required by 75 Pa.C.S. § 1547(a)(2)(ii). The failure so to warn precludes the application of the enhanced penalties. *Xander,* 14 A.3d at 179. Appellant herein contends that Sgt. McClure failed to administer section 1547(a)(2)(ii) warnings to her. She argues that, based upon *Xander,* the evidence was insufficient to prove that she refused the requested blood draw, and that her enhanced sentence was improper. We disagree.

In *Xander,* a police officer stopped the appellee under suspicion that she was driving under the influence of alcohol. *Xander,* 14 A.3d at 175. The police officer observed the appellee as having "slow-moving eyes, delayed reactions, and slurred speech." *Id.* The appellee became agitated and upset, requiring the officer to summon assistance from other police officers. The appellee also declined the arresting officer's request to undergo field sobriety tests. *Id.*

The appellee then was transported to a local hospital for a blood draw. We summarized the appellee's subsequent behavior as follows:

[The appellee] was noncompliant, yelling derogatory remarks at [the arresting officer], and kicking and punching the partition in the police cruiser. As a result, [the officer] radioed the DUI Center to warn them that he would need assistance with [the appellee] upon arrival. [A back-up officer met the arresting officer] in the garage and both officers attempted to remove [the appellee] from the vehicle. [The appellee] began kicking and flailing her legs and, as a result, struck [the back-up officer] with the police cruiser door. Unable to control [the appellee], [the arresting officer] tased her with the drive stun function of his taser device. [The appellee] calmed down and the officers were able to get [the appellee] inside the building to the processing center.

A DVD recording of [the appellee's] interaction with [the back-up officer] and the phlebotomist was presented at trial as a Commonwealth exhibit. The video and audio recording shows [the appellee] repeatedly asking for her "attorney rights" and informing [the back-up officer] and the phlebotomist that she will not answer any questions. [The back-up officer] attempts to explain to [the appellee] that she does not have the right to an attorney during processing, as they are not asking guilt-seeking questions, and are only attempting to book her and conduct a blood draw. [The appellee informs the back-up officer] and the phlebotomist that "you ain't f\* \* \*ing taking no blood test on me." Throughout the video recording, [the appellee] indicates her unwillingness to proceed any further, and at the conclusion of the video, [the appellee] is in-

structed "this concludes the processing of [the appellee], we are done."

*Id.* (citations to the certified record and one footnote omitted).

After the Commonwealth had presented its case at trial, the appellee moved for a judgment of acquittal on the issue of whether she refused the blood draw. The appellee argued that, because none of the police officers provided her with the refusal warnings, the Commonwealth should be precluded from seeking the enhanced penalty associated with refusals. The trial court denied the motion without prejudice to the appellee's right to raise it at a later point in the proceedings. *Id.* at 176.

The jury found the appellee guilty of DUI and specifically determined that she had refused the blood draw. Before sentencing, the appellee filed a post-verdict motion re-asserting her claim that the Commonwealth should be precluded from pursuing the enhanced penalties for her purported refusal of the blood draw. At sentencing, the trial court granted the appellee's motion and sentenced her without applying the enhanced penalties. The Commonwealth appealed. *Id.*

We affirmed the trial court, and held that the warnings are a necessary component of a valid finding of refusal of chemical testing. Specifically, we concluded that:

> the General Assembly specifically included a requirement in § 1547(b)(2)(ii) that the police warn arrestees of the enhanced penalties for a refusal [of chemical testing. Therefore,] a "refusal" for purposes of § 3804(c) necessarily requires a knowing refusal insofar as the police must have provided the arrestee with the warnings beforehand.

> \* \* \*

[The arresting officer] was required to provide [the appellee] with § 1547(b) warnings before [the appellee] could receive the enhanced penalties for DUI pursuant to § 3804(c).

*Id.* at 179.

At first blush, *Xander* and the case *sub judice* are nearly identical factually. As in *Xander*, Appellant herein was arrested upon suspicion of DUI. Appellant slurred her speech and was unable to stand without a noticeable wobble. Moreover, Appellant acted in the same unruly and disruptive manner as did the appellee in *Xander*, including kicking and punching various parts of the police cruiser in which she was being held. In both cases, the police officers requested a blood draw, but were prevented from securing the blood by the suspects' own actions. However, one key fact distinguishes the instant case from *Xander*: here, Sgt. McClure **attempted** to administer the refusal warnings to Appellant, but her obnoxious behavior prevented him from completing the recitation and obtaining a knowing waiver from Appellant. In *Xander*, the police officers never attempted to read the warnings to the appellee.

In *Xander*, we rejected the Commonwealth's argument that the appellee's unruly behavior excused the police officers' failure to administer the refusal warnings. We recognized the "plethora of cases in which this Court has determined a motorist's conduct constitutes refusal to submit to chemical testing." *Id.* at 179. However, we noted that, "in almost every instance, the officers try, in many circumstances repeatedly, to explain the consequences of refusing chemical testing on an uncooperative motorist." *Id.* We agreed with the trial court's finding that the facts of *Xander* differed from those refusal cases because, *inter alia*, "[the police officer] never **attempted** to read [the appellee] the § 1547(b) warnings." *Id.* (emphasis in original).

The instant case presents the scenario that we implicitly condoned as an exception to *Xander's* general rule that police officers must read the refusal warnings to an arrestee before that arrestee can validly refuse chemical testing. That is, when the arresting officer **attempts** to administer the warnings, but the arrestee's unruly and disruptive behavior prohibits the officer from completing the recitation, the arrestee will be deemed to have refused the blood draw. In *Xander*, the officers never attempted to read the warnings to the appellee. Here, Sgt. McClure attempted to do so, but Appellant's behavior prevented him from accomplishing the task. Thus, *Xander* does not control this case.

The Commonwealth presented evidence at trial that Sgt. McClure attempted to read the § 1547(b) warnings to Appellant. However, Appellant ignored Sgt. McClure's attempts and instead continued her "vulgar tirade" against the police, preventing Sgt. McClure from completing the warnings. This evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that Appellant had knowingly refused the blood draw. Consequently, the trial court did not err in applying the enhanced sentencing penalties as a result of Appellant's refusal.

■ Appellant next alleges that the jury's determination that she refused chemical testing was against the weight of the evidence. Appellant first raised this issue in her October 8, 2012 post-sentence motions. After reviewing the matter, the trial court determined that the jury's determination that she had refused the blood draw was not contrary to the weight of the evidence. *See* T.C.O. at 6.

■ In assessing the trial court's ruling, we must "review[ ] the trial court's exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence." *Common-*

*wealth v. Smith,* 604 Pa. 126, 985 A.2d 886, 888 (2009). The fact-finder is free to believe all, part, or none of the evidence; an appellate court will not make its own assessment of the credibility of the evidence. *Commonwealth v. Ramtahal,* 613 Pa. 316, 33 A.3d 602, 609 (2011). "The trial court will only award a new trial when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." *Id.* In turn, we will reverse a trial court's refusal to award a new trial only when we find that the trial court abused its discretion in not concluding that the verdict was so contrary to the evidence as to shock one's sense of justice. In effect, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Id.*

The jury sat as the finder of facts in this case. The jury was in the best position to view the demeanor of the Commonwealth's witnesses and to assess each witness' credibility. The jury heard Sgt. McClure's testimony and found credible his testimony that he attempted to read the refusal warnings to Appellant, but could not complete the task due to Appellant's behavior. The trial court, also having observed the trial first-hand, determined that the jury's verdict did not shock its conscience. Based upon the record before us, the record supports the verdict. We discern no abuse in the trial court's exercise of its discretion in this regard.

■ In her third issue, Appellant claims that her due process rights were violated because, although entered into evidence, the chemical testing warnings form was not published to the jury. Appellant argues that the failure to publish this document to the jury was particularly egregious because the jury was able to view the "startling recording of [Appellant's] violent and outrageous antics while en route

to the police station" immediately upon its admission into evidence. Brief for Appellant at 16. Moreover, Appellant maintains that the form somehow contradicted Sgt. McClure's testimony that he attempted to administer the warnings contained on this form to Appellant. *Id.* at 17. For these reasons, Appellant argues that the error was not harmless.

This issue is waived. At trial, when the warnings form was admitted into evidence, Appellant did not timely object to the fact that it thereafter was not published to the jury. "A defendant must make a timely and specific objection at trial or face waiver of her issue on appeal." *Commonwealth v. Schoff*, 911 A.2d 147, 158 (Pa.Super.2006) (citing Pa.R.A.P. 302(a)); *see also Kaufman v. Campos*, 827 A.2d 1209, 1212 (Pa.Super.2003) ("In order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of the proceedings; the failure to do so will result in waiver of the issue."). Having failed to raise the issue below, Appellant has waived this issue.

■■■■■■ In her fourth issue, Appellant argues that the trial court erred by instructing the jury that Appellant's refusal to submit to the blood test could be considered as evidence of Appellant's consciousness of guilt. Like Appellant's third issue, this issue also is waived because Appellant did not object to the trial court's instruction at trial. "A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." *Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa.Super.2010). Having failed to object to the instruction at trial, Appellant has waived this challenge.

In her fifth and final issue, Appellant offers what appears to be a summation of her legal argument that *Xander* requires this Court to vacate her sentence, and of her factual claim that she did not prevent Sgt. McClure from administering the chemical test warnings. Appellant does not present any additional arguments that would alter our holdings above. Thus, having concluded that the jury's verdict was supported by sufficient evidence and was not against the weight of the evidence, we conclude as well that Appellant's final argument has no merit.

Judgment of sentence affirmed.