J-S10006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE LIVINGSTON | : | |
| | : | |
| Appellant | : | No. 1637 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 13, 2022
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002809-2020

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY PANELLA, P.J.:             **FILED MAY 15, 2023**

Andre Livingston appeals the judgment of sentence entered by the Montgomery County Court of Common Pleas on April 13, 2022. Specifically, Livingston claims the evidence was insufficient to sustain an aggravated assault conviction where he was thrashing around while resisting arrest, resulting in a police officer suffering a fractured finger. Livingston maintains the evidence does not show he intentionally or knowingly caused the injury. We find the claim without merit and hereby affirm.

For purpose of this appeal, the following facts are not disputed. **See** Appellant's Brief, 11/2/2022, at 7-13. On June 1, 2020, Norristown Police Officer Ashley Gaeta was responding to reports about a group of males with guns. Nobody was there when she arrived at the scene but a man and woman passing by in a vehicle asked Officer Gaeta if she was responding to reports

of a man walking around with a machete. While driving around the block to investigate, someone pointed to a sheath on the sidewalk and a woman from a window above described the man who was carrying a machete. While Officer Gaeta was speaking to the woman in the window, the woman identified Livingston, who was walking by, as the individual who had the machete.[1] Officer Gaeta followed Livingston and called for backup before approaching. Officer O'Neill and Officer Samuels responded.

As they approached Livingston and asked to speak with him, he fled, and they pursued. When Livingston encountered Officer O'Neill, he struck her with the heel of his palm to her face which knocked her down and left bruises and abrasions on her face and a sprained knee. Officer Samuels brought Livingston down with a taser but, even after multiple tasings and additional assistance from Officer Romano and Corporal Wiley, Livingston remained uncooperative and tried to grab Officer Samuels's taser, arm and gun.

Detective Charles Leeds was working at his desk at the police station when he received reports that officers were in a physical altercation. He responded to the scene and saw patrol officers in a physical fight with Livingston. Detective Leeds went over to assist but he described Livingston as

_____

[1] No machete was found on Livingston when he was arrested. While the Commonwealth initially charged Livingston with possessing the machete as a form of drug paraphernalia, *see* Information, filed 6/1/2020, at Count 26, it withdrew that charge prior to trial. *See* N.T., Bench Trial, 2/8/2022, at 11.

- 2 -

thrashing about, pulling his arms from officers, and continuing to resist and pull away and fight.

After struggling with Livingston for about seven minutes, the officers were able to detain him with two handcuffs linked together. They patted Livingston down and recovered an Altoids container holding 11 small baggies containing a rocklike material consistent with crack cocaine.

When the police attempted to put Livingston in the patrol vehicle, he kicked his legs and pushed off the car to prevent being placed inside. At this time, he grabbed Officer Romano's taser so hard that he broke the bottom portion off and grabbed the microphone cord of Detective Leeds's radio. Officer Samuels had to pry Livingston's fingers from the radio cord. Once Livingston was finally secured in the vehicle, Detective Leeds noticed pain in his left hand and his finger appeared out of place. Later, when treated at Einstein Montgomery Hospital, an x-ray revealed a small fracture in his finger.

When the police transported Livingston to the station, he placed his foot in the doorjamb to prevent police from removing him from the vehicle. Once out of the vehicle, he refused to walk and had to be carried into the station. In accordance with police department procedures, when force is used in an arrest, paramedics are called to evaluate the patient. Livingston requested to be taken to the hospital. Officer Choiniere and Officer Boyer, who were responsible for crowd control during the initial arrest, were tasked with accompanying Livingston to the hospital and remaining with him there.

At the hospital, Livingston remained uncooperative and had bursts of thrashing and yelling threats. Despite being handcuffed to the bed, Livingston spat at the officers twice. The first spit missed but the second landed blood and mucous on Officer Boyer's uniform.

The Commonwealth originally charged Mr. Livingston on 33 counts but withdrew seven counts before the two-day bench trial began on February 8, 2022.[2,3] Livingston represented himself at trial and was found guilty of

---

[2] "In Amended Bill of Information at docket no. 2809-20, the Commonwealth charged Defendant with the following: Count One (Aggravated Assault), Count Two (Aggravated Assault), Count Three (Aggravated Assault of Ofc. O'Neill), Count Four (Aggravated Assault Ofc. Det. Leeds), Count Five (Aggravated Assault of Ofc. O'Neill), Count Six (Aggravated Assault of Det. Leeds), Count Seven (Aggravated Harassment by Prisoner), Count Eight (Aggravated Harassment of Ofc. Boyer by Prisoner), Count Nine (Aggravated Harassment of Ofc. Choiniere by Prisoner), Count Ten (Terroristic Threats), Count Eleven (Simple Assault of Det. Leeds), Count Twelve (Simple Assault of Ofc. O'Neill), Count Thirteen (Simple Assault of Ofc. O'Neill), Count Fourteen (Simple Assault of Det. Leeds), Count Fifteen (Resisting Arrest), Counts Sixteen through Nineteen (Disarming Law Enforcement Officer), Counts Twenty through Twenty-Three (Disarming Law Enforcement Officer), Count Twenty-Four (Possession of a Controlled Substance), Count Twenty-Five (Drug Paraphernalia - Altoids container containing cocaine), Count Twenty-Six (Drug Paraphernalia - Black Cellphone and/or Machete), Count Twenty-Seven (Harassment/Strike, Shove, Kick, Etc. - Ofc. O'Neill), Count Twenty-Eight (Harassment/Strike, Shove, Kick, Etc. - Det. Leeds), Count Twenty-Nine (Disorderly Conduct/Engaging in Fighting), Count Thirty (Recklessly Endangering Another Person - Ofc. O'Neill), Count Thirty-One (Recklessly Endangering Another Person - Corp. Wiley), Count Thirty-Two (Recklessly Endangering Another Person - Det. Leeds), and Count Thirty-Three (Recklessly Endangering Another Person - Ofc. Romano)." Trial Court Opinion, 8/22/2022, at 6-7.

[3] "At the commencement of the bench trial, the Commonwealth withdrew Counts 1, 2, 7, 10, 16-19, 24, and 26." Trial Court Opinion, 8/22/2022, at 7.

seventeen counts, including the aggravated assault of Detective Leeds, and not guilty of six counts.[4] Id. at 118. Livingston was subsequently sentenced to an aggregate sentence of four to eight years of incarceration.[5]

While the case consists of multiple convictions and the 1925(b) statement raises several issues, Livingston's brief only challenges the sufficiency of the evidence to find that Livingston's thrashing about during the police officers' attempts to detain him proves he intentionally or knowingly caused bodily injury to Detective Leeds. **See** Appellant's Brief, at 5. Livingston does not contest the aggravated assault convictions for the injuries he inflicted to other officers.

In reviewing sufficiency of the evidence claims, this Court must "determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Olsen**, 82 A.3d 1041, 1046 (Pa. Super. 2013). Moreover, "[t]he evidence established at trial need not preclude every

_____

[4] "At the conclusion of trial, the Court found Defendant guilty of Counts 3, 4, 8, 9, 11, 12, 15, 20-23, 25, 27, 28, 29, 31, and 33; the Court found Defendant not guilty of Counts 5, 6, 13, 14, 30, and 32." **Id.**

[5] Livingston was sentenced to two to four years of incarceration on counts three and four, to run consecutively, with all other counts running concurrently to count three. **See** N.T., Sentencing, 4/13/2022, at 17-18.

possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Id***.

As this was a bench trial, the trial court is finder of fact and this court will not "re-weigh the evidence and substitute our judgment for that of the fact-finder" and will not vacate the judgment of sentence "unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Id***.

Livingston asserts that the evidence was not sufficient to support a conviction of aggravated assault on Detective Leeds. Under Pennsylvania law, a person is guilty of aggravated assault against a police officer if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty."18 Pa.C.S. § 2702(a)(3). The issue here is solely limited to whether the evidence was sufficient to find Livingston intentionally or knowingly injured Detective Leeds:

> The only element at issue here is whether Mr. Livingston attempted to cause or intentionally or knowingly caused bodily injury to Detective Leeds. There is no question that Detective Leeds's fractured finger constitutes a bodily injury and that he was a police officer acting in performance of his duties on June 1, 2020.

Appellant's Brief, at 17.

Livingston argues that his thrashing about while attempting to resist arrest is not sufficient evidence to prove he intentionally or knowingly injured Detective Leeds. He asserts "[t]he case law is clear that to find that defendant

committed an aggravated assault upon a police officer it must be shown that they were not merely resisting erratically, like Livingston, but affirmatively striking the officer." Appellant's Brief, at 19. However, Livingston fails to support this assertion with precedent. He cites ten cases where defendants were convicted of aggravated assault for striking a police officer to support this argument. However, we note that none of the cited cases explicitly holds that intentionally striking a police officer is required to support a finding of intentionally or knowingly inflicting injury.

As highlighted by the trial court, we find **Commonwealth v. Brown**, 23 A.3d 544 (Pa. Super. 2011) (*en banc*), more analogous to the present case. In **Brown**, the defendant was convicted of aggravated assault under section 2702(a)(3). In that case, the assault arose when Brown was detained on suspicion that he was involved in a hold up in a nearby convenience store:

> At trial, Officer Schiazza testified that when he attempted to handcuff Brown, Brown pulled away, threw Officer DeBella to the ground, and ran away. Officer Schiazza further testified that after he tackled Brown, Brown struggled violently with him, and that as Brown flailed his arms he struck the officer repeatedly on the arm, shoulder and mouth, causing him to have a swollen lip.

**Id**. (record citations omitted).

He appealed, arguing the evidence was insufficient to prove he intentionally caused bodily injury to the police officer, only that he came into contact with the officer while trying to avoid being handcuffed. **See id**. at 560. This Court held that "intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." **Id.** Furthermore, "[i]t was

within the jury's province to find that Brown, by throwing Officer DeBella to the ground and then striking Officer Schiazza repeatedly by wildly flailing his arms as he resisted arrest, intended to cause injury to the officers." *Id*.

In an attempt to distinguish *Brown* from the current matter, Livingston notes that Brown struck Officer Schiazza multiple times whereas Livingston wrestled several officers and the "only evidence of an officer being 'struck' here was regarding Officer O'Neill, the conviction for which Mr. Livingston is not contesting." Appellant's Brief, at 21. Moreover, Livingston highlights that *Brown* is unclear as to which officer in that case was the victim of aggravated assault. *See id*. at 20-21.

However, upon review, we do not find these factual distinctions sufficient to warrant deviation from the central holding in *Brown*. There, the Court clearly and explicitly stated a fact-finder may derive intent from "wildly flailing arms" while "resist[ing] arrest." *Id*. at 560. Livingston's apparent confusion over which officer was the victim is remedied by the Court's use of the plural "officers" when describing who Brown intended to injure. Since both officers were included as victims, the Court explicitly found that Brown's conduct in wildly flailing his arms was sufficient to support the intent to cause injury.

Livingston also attempts to distinguish *Brown* by noting that, unlike Brown who was arrested immediately after committing robbery, there is no evidence that Livingston knew why the officers were following him or wanted

to execute a pedestrian stop. While this difference may be relevant to why each man was resisting arrest, the fact does not necessarily negate either's intent to inflict injury on the officers while resisting arrest. As such, the ruling in **Brown** is directly applicable to this case.

In arguing which facts and evidence are applicable to establishing intent, Livingston's brief makes two contradictory arguments. On one hand, Livingston suggests the trial court erred by inferring intent to harm Detective Leeds within the same context of the multiple, uncontested, aggravated assaults he inflicted upon other police officers during the arrest. In this regard, Livingston argues the court should isolate the intent behind the specific thrashing that fractured Detective Leeds's finger separately from any prior or subsequent acts. On the other hand, in the same brief, Livingston argues, "[his] actions, however, did not occur in a vacuum." Appellant's Brief, at 23. He states the trial court erred by not considering the effects of the social unrest occurring across the country related to the death of George Floyd who was murdered by a police officer during an arrest in Minneapolis, Minnesota. On this issue, we merely reiterate that intent may be shown by the surrounding circumstances and, as the fact-finder, the trial court is free to believe all, part, or none of the evidence regarding those circumstances.

On appeal, we must view the evidence in a light most favorable to the Commonwealth as verdict winner. Before his interactions with Detective Leeds, Livingston struck Officer O'Neill in the face and was already wrestling

with the other officers. His combative nature and actions continued throughout the entire arrest. Even after the arrest, when Livingston had to be restrained to a hospital bed with handcuffs, and he spat blood at the police officers. The evidence supports, throughout Livingston's entire interaction with police, he was engaging in intentional, aggressive, and violent actions intended to harm or injure the police officers. Considering these surrounding circumstances, the evidence was sufficient for the trial court to infer Livingston was intentionally, or at least knowingly, thrashing, grabbing, and flailing to injure the officers, including Detective Leeds.

Livingston suggests that the national social unrest at the time caused him to resist arrest due to a distrust and fear of police officers. Moreover, Livingston states that the trial court ignored these factors but can point to nothing in the record to support this allegation. As Livingston concedes, he "referenced George Floyd and other victims of police violence in his opening statement, as well as his fear of being another black man killed by police during his closing argument." **Id.** at 24. Further, Livingston does not argue he was legally justified in assaulting the officers here. **See id**., at 25. As such, Livingston's arguments about the national context of this event are insufficient to nullify the trial court's conclusion that he intentionally assaulted Detective Leeds.

Upon thorough review, we find that the record is sufficient to support the trial court's finding that Livingston intentionally or knowingly injured Detective Leeds. Therefore, we hereby affirm.

Judgement of Sentence Affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2023