J-S14037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD L. LAVENDER | : | |
| | : | |
| Appellant | : | No. 1908 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 27, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-SA-0000331-2024

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 9, 2025**

Appellant, Leonard Lavender, appeals from the judgment of sentence

entered in the Court of Common Pleas of Bucks County that fined him $25

plus costs for violating Section 3322 of the Vehicle Code, vehicles turning left,

75 Pa.C.S.A. § 3322,[1] for his part in a vehicular accident. In his counseled

appeal to this Court, he contends the Commonwealth failed to present

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Section 3322 of the Vehicle Code provides,

**§ 3322. Vehicle turning left**

The driver of a vehicle intending to turn left within an intersection or into an
alley, private road or driveway shall yield the right-of-way to any vehicle
approaching from the opposite direction which is so close as to constitute a
hazard.

75 Pa.C.S.A. § 3322.

sufficient evidence to support the Section 3322 charge against him. We affirm.

We adduce the pertinent facts from the notes of testimony taken from Appellant's Summary Appeal trial of June 27, 2024. The two-vehicle accident occurred on June 18, 2023, at approximately 2 p.m. on a clear, sunny day, at the intersection of John Fries Highway and Spinnerstown Road, which was governed by a functioning traffic light providing green, yellow, and red lights, but no turn arrows. N.T., 6/27/24, at 4-7, 19. The vehicles were traveling in opposite directions on the four-lane John Fries Highway as they entered the intersection.

Appellant, traveling east, entered the left turn lane, made his left turn, and drove across the front of the other driver's vehicle, which was traveling west and continuing straight through the intersection in the right travel lane. N.T. at 7.

Testifying as a Commonwealth witness, the other driver indicated he was traveling west at "about 40, 45 miles an hour" in the right travel lane and continuing straight on John Fries Highway. N.T. at 7. He was about five car lengths from the intersection with a green light when he noticed Appellant, driving in the opposite direction at the intersection in the left turn lane, had turned left and was continuing across the westbound travel lanes directly in front of his vehicle. N.T. at 7, 9. The other driver said he attempted to avoid broadsiding Appellant's vehicle by braking hard and swerving left. N.T. at 8.

On cross-examination, the other driver denied defense counsel's suggestion that he was driving while distracted by "constantly" looking at his GPS for the location of an ice cream parlor where he and his parents, who were driving behind him, were going to celebrate a family birthday. N.T. at 12. He also denied defense counsel's suggestion that he had simultaneously drifting into the right-turn lane to appear as if he intended to turn right at the intersection. N.T. at 12.[2]

The Commonwealth next produced Pennsylvania State Police Trooper Danielle Heimbach, who prepared the crash reconstruction report of this event. N.T. at 16. Upon her arrival, Appellant's vehicle was north of the other driver's vehicle and facing east while positioned in the westbound lane of travel. N.T. at 20. The trooper testified that during her interview with Appellant he stated his belief that he would have had enough time to complete the left turn safely if the other driver were not speeding. N.T. at 21. She learned also that two back seat passengers were riding with Appellant at the time of the accident. N.T. at 22.

Trooper Heinbach testified that Appellant's vehicle sustained damage to its passenger side rear door. Its passenger rear window had a head

_____

[2] Notably, testimony from the Pennsylvania State Police Trooper Danielle Heimbach who filed the crash reconstruction report clarified that there was no right-turn lane at the westbound section of John Fries Highway where the other driver was traveling, although there is a widening shoulder and a concrete pad in that location. N.T. at 19, 22. The trial record includes drawn illustrations of the intersection that are consistent with Trooper Heimbach's testimony.

impression on it, and the passenger side rear quarter panel and trunk were damaged. N.T. at 21.

Also testifying was the other driver's father, who recounted that he and his wife were driving in the westbound right lane about one hundred yards behind their son as they were on their way to the ice cream parlor to celebrate his birthday. N.T. at 26. He said he and his son "absolutely" knew the directions to the ice cream parlor and did not need a GPS to get there. N.T. at 30. Father testified he was driving at a speed between 45 and 50 miles per hour, which was within the posted speed limit. N.T. at 26.

According to Father, nothing about the driving or positioning of his son's vehicle indicated that it would make a right turn at the intersection. N.T. at 27. Father witnessed Appellant's vehicle crossing in front of his son's westbound lane of travel. N.T. at 27. The brake lights to his son's car activated as it pulled hard to the left, and its tires made skid marks during the abrupt change in direction. N.T. at 28. Father believed it was his son's attempt to drive around the back of Appellant's car to avoid a collision. N.T. at 28.

Finally, Appellant testified in his own defense. He confirmed that he is 64 years old, has been a professional chauffeur for the last 18 years with clientele including attorneys, judges, and physicians, and "log[s] in 90,000 miles a year" in his travels. N.T. at 32, 39. He maintained that he prioritizes safety as a professional driver, particularly when he is chauffeuring passengers, which he was doing at the time of the accident. N.T. at 33.

Asked whether he was familiar with the intersection in question, Appellant answered in the affirmative, explaining that it was part of a route he has taken every weekend for the past six years with the passengers riding with him that day. N.T. at 33. He picks them up in Bryn Mawr and drives them to Quakertown, and this intersection is part of the weekly trip. N.T. at 33-34.[3]

As for the day in question, Appellant testified that he stopped at the intersection to allow traffic approaching from the opposite direction to pass. "I looked all ways and proceeded with caution. . . . I proceeded with caution when it was safe to do so" N.T. at 34, 35. He then offered a more detailed account:

> I saw no vehicles in the two [westbound] lanes, but I did see the other gentleman's car coming up. It looked like it was riding the shoulder. He wasn't in a lane. He was in the shoulder. And since that's such a quirky intersection itself; because not only did it have a cement pad there which divides the road, but there is also stripes in the road as well. So, if you're in the wrong lane – or let's say if you're not making a right turn, then I would suggest that you do so because you would have to swerve back into oncoming traffic, which the gentleman did. . . . That's how I got hit.

N.T. at 35. He added that the westbound shoulder in which he claimed the other driver was traveling was wide enough to "look like it could be confused as a lane." N.T. at 35-36.

_____

[3] Appellant identified his passengers as two women, one of whom was 90 years old. N.T. at 38.

Therefore, Appellant maintained that it was only after he had initiated his left turn to drive across the John Fries Highway's westbound lanes and proceed north on Spinnerstown Road that the other driver turned back from the shoulder to the regular lanes of travel and drove into the side of Appellant's vehicle. N.T. at 36.

On cross-examination, Appellant reiterated his contention that the other driver was "not in a lane, they were riding the shoulder" when Appellant commenced his left turn. N.T. at 40. He denied speaking to the state trooper because of her "aggressive nature . . . she determined it was a left turn problem. It was a left turn situation, I failed to yield the right-of-way[,]" and he testified again that he executed a left turn only when it was safe to do so. N.T. at 41. He claimed that "after 40 minutes of consulting with the other party[,] she hollered and bellowed at me and said, "You're at fault, you're wrong. You failed to yield the right-of-way." N.T. at 41.

Before excusing Appellant from the stand, the trial court sought clarification of Appellant's account of the accident:

> THE COURT: I'd like to understand something. You were making a left-hand turn.
>
> [Appellant]: Yes.
>
> Q: It's your testimony today that the car was in a position that it was on – it was moving towards you, correct?
>
> . . .

A:        Okay. The other gentleman's car was riding the shoulder coming in the other direction.

Q:        Yes.

A:        Okay. If he would have stayed on that shoulder, he would have clearly had the turning lane to the right of the cement patch; which he should have stayed.

Q:        And had he done that, he would have turned right into –

A:        In front of me. He would have turned in front of me because I could see him. But instead that's not the direction they [sic] were going, as he just mentioned, because he was getting ice cream. And he veered back into the main stream of traffic to hit me in the passenger's rear panel.

Q:        So, it's your contention he was in the right lane about to turn right, and you felt that he would have been coming right behind you [on Spinnerstown Road]?

A:        He wasn't in a lane at all. If you're riding the shoulder, that's not a lane.

Q:        And he was coming towards you?

A:        Right. But he veered. He veered from the shoulder to one of the two lanes to cross the intersection to hit me in the rear.

Q:        If he had continued straight, the two of you were still on a collision course; correct?

A:        If he would have continued straight from the shoulder he was on, he would have made that right turn, and we would not be here today because he would be in front of me after we've navigated – after I have navigated my left turn and he veers in front of me to go right.

> Basically, what I'm concluding is or I'm advocating is, he should have stayed in the position he was. But he saw the stripes in the middle, I would have guessed. He saw the stripes on the ground which depicted his decision-making to make a left turn into – excuse me, to switch lanes.

N.T. at 42-44.

On redirect, Appellant clarified his position that he initiated his left turn in the intersection to proceed on Spinnerstown Road because it appeared the other driver was preparing to turn right on Spinnerstown Road, which would have placed the other driver ahead of him without a collision. N.T. at 44. Because he relied on the other driver's position on the right shoulder, a collision occurred when the other driver "changed his decision and moved back into the lane of traffic." N.T. at 44. Appellant insisted he turned left only after deeming it safe to do so. N.T. at 45.

At the conclusion of testimony, the trial court recited the language of Section 3322 of the Vehicle Code and found Appellant failed to yield the right-of-way while making a left-hand turn in violation of the statute. N.T. at 46-47. This appeal follows.

Appellant contends that evidence of the other driver's excessive rate of speed and sudden, unpredictable shift from of a right-turn location on the highway precluded the Commonwealth from sustaining its burden to prove the other driver retained a statutory right-of-way to continue straight through the intersection. *See* Appellant's Brief, at 10 (citing decisional law recognizing

retention of one's right-of-way entering an intersection is dependent upon one's maintaining a reasonable manner of driving with respect to both speed and attentiveness of other vehicles).[4]  Appellant maintains that the only reasonable inference from the other driver's testimony that he could not avoid a collision despite seeing Appellant's vehicle from a distance of five or so car lengths is that the other driver was speeding, inattentive, or both as he approached the intersection.  The degree of damage to Appellant's vehicle and the location of the vehicles' respective post-collision rest positions support this exculpatory inference, he concludes.

The Commonwealth responds that it bore its burden of proof through the testimony of its witnesses, who maintained that the other driver was driving attentively and within the speed limit but could not avoid Appellant's vehicle as it crossed in front of him with only a roughly five-car-length distance remaining between them on the highway.  Appellant cannot prevail on an appellate claim, the Commonwealth concludes, that erroneously asks this Court to read the evidence in a light most favorable to himself and upend the trial court's credibility determination made in favor of testimony provided by the other driver and his father and against Appellant's blame-shifting account of the collision.

_____

[4] **See** Appellant's Brief at 10 (citing **Lind v. Thomas**, 401 A.2d 830,8333 (Pa. Super. 1979) (motorist with right-of-way through an intersection "must take such precautions in regard to the control and speed of [their] car and keeping an alert lookout for cars approaching the intersection as a reasonably prudent [motorist] solicitous of [their] own safety would take. . . .").

For its part, the trial court initially deems Appellant's concise statement of matters complained of on appeal mostly incomprehensible. Appellant's concise statement raises the following issues:

1.      [The trial court] erred, as overlooked or misapprehended facts of recorded material pertinent to the outcome of this judgment.

2.      Chronological narration of recorded material depicts presiding District Attorney establishing specific question and response to Grayden Kramer (Driver) responses introduced RISK when responding to questions affirming Depth of Perception, Clarity, Judgment, Vision, which speaks volumes while Operating a motor Vehicle.

3.      The Honorable Court erred, in allowing to consider continued presentation as Grayden Kramer (driver) was corrected verbally by [the trial court] during Testimony, aforementioned.

4.      [The trial court] erred, in allowing Scott Kramer (father) to testify as a Witness, in [sic] behalf of Grayden Kramer (son). Scott Kramer was not allowed to testify or be visible during Municipal Court Proceedings.

Appellant's Pa.R.A.P. 1925(b) Concise Statement.

The trial court identifies a second potential obstacle to its task of completing a Rule 1925(a) opinion, namely, Appellant's failure to order transcripts of his trial, in violation of the trial court's July 18, 2024, order directing him to do so pursuant to Pa.R.A.P. 1911. While it observes that this Court may deem Appellant's issues waived for failing to supply the trial court

with transcripts,[5] it nevertheless denies that their absence impaired its ability to author a Pa.R.A.P. 1925(a) opinion addressing the issues raised in Appellant's concise statement, as it recollects the evidence adduced at the one-hour long bench trial. Furthermore, while it criticizes Appellant's concise statement as difficult to understand, it is nonetheless able to construe the concise statement as raising a challenge to the trial court's admission of certain testimonial evidence and its determination of the sufficiency of the evidence based on the content of the witnesses' respective testimonies. We note that the trial court's identification of the question raised in the concise statement aligns with the issue and argument Appellant presents in his appellate brief.

Specifically, Appellant's counseled brief presents a single, "catchall" statement of the question presented on appeal that distills the four issues raised in his Rule 1925(b) concise statement. Specifically, the question presented in the Brief of Appellant asks, "Did the Trial Court err in finding that the Commonwealth met its burden of Appellant Leonard Lavender being guilty of violating 75 Pa.C.S.A. Section 3322?" Brief of Appellant, at 7.

Appellant's three-page argument directed to the sufficiency of the evidence devotes two of its pages to reciting the evidence presented at trial and one page to the conclusion he draws from such evidence. Specifically, he posits:

_____

[5] We note the certified record transmitted to this Court contains the notes of testimony from Appellant's bench trial.

- 11 -

"In viewing the evidence in the light most favorable to the Commonwealth, Mr. Kramer was traveling at a high rate of speed and did not have his car under control in striking Appellant's vehicle as he was attempting to complete a left turn onto Spinnerstown Road. *See Byrne v. O.G. Schultz, Inc.*, 160 A. 125 (Pa. 1932) (Drivers having the right of way must have their cars under control and, if necessary, bring them to a stop within the shortest possible distance). Moreover, Mr. Kramer, who saw Appellant's vehicle from "five or so" car lengths away, hit Appellant's vehicle at such a great force so as to cause Appellant's vehicle to spin from facing the North direction of Spinnerstown Road to the east direction of John Fries Highway.

Therefore, upon giving all reasonable inferences of the evidence admitted at trial and viewing the same in the light most favorable to the Commonwealth, it cannot be said that the [Commonwealth] proved the elements of 75 Pa.C.S.A. Section 3322 beyond a reasonable doubt in light of the physical evidence of point of impact and testimony made by the Commonwealth witnesses surrounding the circumstances of the accident.

Brief of Appellant, at 14.

We review Appellant's sufficiency of the evidence challenge under the following standard.

In reviewing sufficiency of the evidence claims, this Court must "determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Olsen*, 82 A.3d 1041, 1046 (Pa. Super. 2013).... [T]his Court will not "re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*. The fact-finder may resolve any doubts regarding a defendant's guilt "unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id*. Moreover, "[t]he evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*. A complainant's testimony alone is sufficient to sustain a conviction for a criminal offense, "so long

as that testimony can address and, in fact, addresses, every element of the charged crime."

***Commonwealth v. Horlick***, 296 A.3d 60, 62 (Pa. Super. 2023).

Appellant was convicted of violating Section 3322 of the Vehicle Code, reproduced *supra*, which provides, in relevant part, "The driver intending to turn left within an intersection . . . shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute a hazard." 75 Pa.C.S.A. § 3322. He maintains, however, the evidence at trial established that the other driver drove so erratically, unpredictably, and above the posted speed limit as to divest him of the statutory "right-of-way" status afforded to him by the trial court. We disagree.

Appellant's argument would prevail only if this Court were to disregard a binding standard of review that requires us to view the trial evidence in a light most favorable to the prevailing party—in this case the Commonwealth—and view it, instead, in his favor, after re-weighing the evidence and substituting our judgment for that of the factfinder. This we may not do.

The trial court, sitting as finder of fact during Appellant's bench trial, understood the witnesses' conflicting testimonies describing the accident at issue and considered the crash reconstruction testimony of the Pennsylvania State Police trooper who was dispatched to the accident scene and interviewed the drivers there. At the conclusion of trial, the trial court credited the other driver's testimony that he was neither speeding, distracted, nor swerving from the berm back to the westbound right lane of travel, and it discredited Appellant's testimony that he initiated his left turn across the highway only

- 13 -

because the other driver's car gave every indication it was preparing to make a right turn off the highway.

Nothing in the record undermines the trial court's findings of fact and conclusions of law. That the cars sustained significant damage and came to rest in positions suggesting a violent crash is not inconsistent with either the other driver's compliance with the highway speed limit at the relevant time or his testimony that accident avoidance on his part was not possible with only five car-lengths' distance between his car and Appellant's after Appellant turned left across the westbound lanes. As such, it was within the sound discretion of the trial court sitting as finder of fact to credit the testimonies of both the other driver and the Pennsylvania State Police accident reconstructionist and conclude that the Commonwealth had sustained its burden to prove beyond a reasonable doubt that Appellant had violated Section 3322 of the Vehicle Code.

Judgment of sentence Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/9/2025