J-S48036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                         :            PENNSYLVANIA
               Appellee         :
                                  :
               v.                :
                                  :
DOUGLAS IOVEN                   :
                                  :
             Appellant      :          No. 1674 EDA 2016

Appeal from the Judgment of Sentence May 13, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0008255-2014

BEFORE:   DUBOW, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:               **FILED OCTOBER 19, 2018**

Appellant, Douglas Ioven, appeals from the judgment of sentence imposed pursuant to his jury conviction of false imprisonment and official oppression.[1] We affirm.

We take the following facts and procedural history from the trial court's December 20, 2017 opinion:

> On June 18, 2014 [Appellant] was charged with retaliation against a witness, witness intimidation, simple assault, obstructing administration of law, false imprisonment, and official oppression, stemming from an incident within the underground area of the Southeastern Pennsylvania Transit Authority ("SEPTA") Suburban Station in Center City Philadelphia on Christmas day, December 25, 2013. On that date[,] complainant, Muibat Williamson, . . . alleged that [Appellant], while acting in his capacity as a uniformed and on duty SEPTA police officer, rudely barged ahead of her as she stepped forward to purchase

---

[1] 18 Pa.C.S.A. §§ 2903(a) and 5301, respectively.

---

\*   Retired Senior Judge assigned to the Superior Court.

her coffee at the counter in the Dunkin Donuts coffee shop located in the underground area just above SEPTA station train tracks. The collective evidence at trial established that [Appellant] and the complainant argued at the coffee shop [about Appellant stepping on Ms. Williamson's foot] until they were separated by another customer[, Tameka Bowman,] also waiting in line to purchase coffee that Christmas morning. . . . The store video retrieved from the Dunkin Donuts store played at trial displayed some of the behavior at issue.

The complainant testified that she had just finished working as a night shift nurse before going to the Dunkin Donuts and engaging in the argument with [Appellant]. After the initial disagreement ended, the complainant walked to another part of the station to report her view that [Appellant] had acted improperly as an officer to the personnel located in a small SEPTA police administration office located at the end of one of the station hallways. Ms. Williamson recalled that she walked briskly to the office at the end of a long corridor and knocked on the closed door and window area to alert someone inside and that no one responded. She observed [Appellant] watch her from the other end of the hallway.

Ms. Williamson reported that she observed [Appellant] put down his coffee and heard him demand that she come to him. She became fearful because she was alone and ran back toward the public concourse area by the Dunkin Donuts shop. [Appellant] then pursued her throughout the station hallways, grabbed her outer clothing, [and] . . . intercepted her path. [When Ms. Bowman heard Ms. Williamson screaming, she ran toward the commotion, and observed Appellant struggling with Ms. Williamson and roughly pushing her down on the floor.]

Further testimony was introduced that [Appellant] . . . received the physical aid of fellow SEPTA police officers. Those responding officers, [Lieutenant Garrett Marsh and Officer James Pearlingi,] believing that they needed to assist [Appellant], also grabbed hold of the complainant and physically subdued her. The victim reported that during this event [Appellant] forcefully shoved [her] into the wall and against the side of an automated teller machine [(ATM)]. . . .

(Trial Court Opinion, 12/20/17, at 1-3) (unnecessary capitalization and record citations omitted).

On March 28, 2016, the jury convicted Appellant of false imprisonment and official oppression.[2] On May 13, 2016, with the aid of a Presentence Investigation Report (PSI), the court sentenced Appellant to an aggregate term of fifteen consecutive weekends of imprisonment, plus four years of probation, anger management counseling, and community service. Appellant did not file a post-sentence motion. On May 24, 2016, Appellant timely appealed.[3]

Appellant raises seven questions for this Court's review:

A. Whether the evidence was insufficient as [a] matter of law and against the weight of the evidence to support false imprisonment and official oppression?

B. Whether the Appellant's waiver of [his] right to testify was not knowing and intelligent since it was based on inaccurate assertions of what would be permissible impeachment?

C. Whether trial counsel was ineffective for failing to present available and substantial character evidence was error which was based on inaccurate statement to the Appellant of what the law was regarding cross examination of character witnesses?

_____

[2] At the close of the Commonwealth's case, the trial court granted Appellant's motion for judgment of acquittal on the charges of retaliation against a witness or victim, 18 Pa.C.S.A. § 4953(a); and intimidation of a witness/victim, 18 Pa.C.S.A. § 4952(a)(1). The jury returned a verdict of not guilty on the charges of simple assault, 18 Pa.C.S.A. § 2701(a); and obstruction of administrative law/other governmental function, 18 Pa.C.S.A. § 5101.

[3] On June 7, 2016, Appellant filed a timely court-ordered statement of errors complained of on appeal. The court filed an opinion on December 20, 2017. **See** Pa.R.A.P. 1925.

D.      Whether the Appellant was misinformed by counsel as to number of peremptory challenges[?] Counsel told [Appellant] five instead of seven, the correct number, which led to jurors being accepted that [Appellant] did not want?

E.      Whether the trial court erred in failing to declare a mistrial after SEPTA Police Chief Nestel embraced of [sic] a Commonwealth witness, Tamika, in front of jury?

F.      Whether the trial court erred by failing to grant a mistrial where Police Officer Harden's reference to [Appellant] as[]a "former officer" was prejudicial and comment gave jury information that could lead them to believe that SEPTA police department was accepting the credibility of the complaining witness?

G.      Whether the trial court erred in answering the jury question regarding official oppression since it lacked specific factual allegations of criminal conduct?

(Appellant's Brief, at 5) (unnecessary capitalization omitted).

In Appellant's first issue, he maintains that the evidence was insufficient to support the verdict because the Commonwealth failed to meet its burden to prove he abused his position or caused false imprisonment. (**See id.** at 15).[4]  Appellant's first claim does not merit relief.

Our standard of review for a challenge to the sufficiency of the evidence is well settled:

_____

[4] Appellant also claims that the verdict was against the weight of the evidence because the complainant's testimony was incredible. (**See id.** at 14-15). However, any challenge to the weight of the evidence is waived for Appellant's failure to raise it in the trial court pursuant to Rule 607(A). **See** Pa.R.Crim.P. 607(A); **Commonwealth v. Kinney**, 157 A.3d 968, 972 (Pa. Super. 2017), *appeal denied*, 170 A.3d 971 (Pa. 2017).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Thomas*, ___ A.3d ___, 2018 WL 3679940, at *5 (Pa. Super. filed Aug. 3, 2018) (citation omitted).

A person commits the crime of false imprisonment "if he knowingly restrains another unlawfully so as to interfere substantially with his liberty." 18 Pa.C.S.A. § 2903(a). An individual commits official oppression if he, "acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity . . , knowing that his conduct is illegal . . . subjects another to arrest, detention, search, seizure, [and] mistreatment[.]" 18 Pa.C.S.A. § 5301.

Here, the Commonwealth produced evidence that Appellant, a SEPTA police officer, stepped on Ms. Williamson's foot and argued with her, before Ms. Williamson went down a long private hallway to the police administration

office to report his actions. (**See** N.T. Trial, 3/23/16, at 11, 13, 120, 122, 124). As she knocked at the office window, she observed Appellant watching her from down the hall before he yelled to her, demanding to know what she was doing. (**See id.** at 132). After Ms. Williamson informed him that was attempting to report him, Appellant repeatedly told her to leave the area, ultimately threatening her that he would handcuff her if she did not "get the fuck out of that place." (**Id.** at 133). When she did not obey his commands, he starting running at her from his location in the hall, and chased the complainant as she headed back toward the Dunkin Donuts. (**See id.** at 133-34). Upon catching up to the complainant, Appellant grabbed her and knocked her head into an ATM machine. (**See id.** at 136). He then led responding officers, Lieutenant Marsh and Officer Pealingi, to believe he needed assistance, allowing them to grab the complainant, put her in a headlock, and ultimately handcuff her. (**See id.** at 140; N.T. Trial, 3/24/16, at 72, 76, 78-81).

Based on the foregoing, we conclude that the Commonwealth met its burden of proving that Appellant, in a SEPTA police uniform, without cause, "knowingly restrained" complainant, and "knowing that his conduct [was] illegal . . . subject[ed] [her] to arrest, detention, search, seizure, [and] mistreatment[.]" 18 Pa.C.S.A. §§ 2903(a), 5301(1); **see Thomas**, **supra** at *5. Appellant's challenge to the sufficiency of the evidence fails.

In his second through fourth issues, Appellant alleges the ineffective assistance of trial counsel. (*See* Appellant's Brief, at 5, 16-21).[5] We decline to review these issues because claims of ineffectiveness of counsel are properly deferred until post-conviction review. *See Commonwealth v. Murray*, 174 A.3d 1147, 1153 (Pa. Super. 2017), *appeal denied*, 187 A.3d 204 (Pa. 2018) ("Absent extraordinary circumstances, which do not exist here, claims of ineffective assistance of counsel are to be deferred to PCRA review . . . and such claims should not be reviewed upon direct appeal.") (internal quotation marks and citation omitted).

In his fifth issue, Appellant maintains "that the trial court erred by not granting a mistrial where the chief of police embraced a key Commonwealth eyewitness in view of the jury." (Appellant's Brief, at 22). This issue is waived.

Not only does our review confirm that Appellant did not move for a mistrial on this basis, our review of the certified record confirms that no such "embrace" occurred. (*See* Trial Ct. Op., at 22) ("[T]here is no evidence of any alleged embrace or handshake in the trial transcript occurring at any time or in any manner observed by the jury."). Therefore, this issue is waived.

---

[5] Appellant's second and fourth issues in his statement of questions involved do not expressly use the words, "ineffective assistance." (*See* Appellant's Brief, at 5). However, it is clear from the argument section of his brief that this is what he is claiming. (*See id.* at 16-17, 20-21).

*See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In his sixth issue, Appellant argues that "the trial court failed to grant a mistrial where Officer Hardin referred to the Appellant as a former police officer." (Appellant's brief, at 24) (record citation omitted). This issue is waived for Appellant's failure to provide any pertinent law or discussion. (***See id.***); ***see also*** Pa.R.A.P. 2119(a)-(b). Moreover, it would not merit relief.

Our standard of review of this matter is well-settled:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

***Commonwealth v. Johnson***, 107 A.3d 52, 77 (Pa. 2014), *cert. denied*, 136 S. Ct. 43 (2015) (citation omitted).

As to this issue, the trial court observed:

> . . . Police Officer Hardin only referred to Appellant at "former officer" once during direct examination when he was testifying about his arrival at the scene of the crime. No information was provided concerning any reason for [Appellant's] role as a former officer. (***See*** N.T. Trial, 3/24/16, at 31). At that time, [the] court held a conference at sidebar with counsel to discuss the mention of "former officer". [Appellant's] trial counsel orally moved for a mistrial, which th[e] court denied. (***See id.*** at 31-32). Th[e] court then called for a short break, excused the jury, and gave a cautionary instruction to Police Officer Harden to refrain from referring to Appellant as a former officer. (***See id.*** at 32). Police Officer Harden was explicitly cautioned that there was

a prior agreement between the parties to refrain from referencing anything regarding Appellant's employment termination from SEPTA. (*See id.*). Police Officer Harden complied fully with the instruction and referred to Appellant by Appellant's name only in the remainder of his testimony. (*See id.* at 34-45).

Accordingly, the mere fact that there was a single reference to [Appellant] as a "former officer" did not denote any negativity to [him]. Moreover, because this was the only reference to Appellant as a "former officer[,]" stated without any reason given for the change of employment, Appellant was not prejudiced deserving of the extreme relief of a mistrial. . . .

(Trial Ct. Op., at 12-13) (some capitalization omitted).

We discern no abuse of discretion. The single reference to Appellant as a former officer, without any further elaboration, and in light of the magnitude of evidence against Appellant, was not "of such a nature that its unavoidable effect is to deprive [him] of a fair trial." *Johnson*, *supra* at 77 (citation omitted). Therefore, we conclude that the trial court properly exercised its discretion in denying Appellant's motion for a mistrial. *See id.* Appellant's sixth issue would lack merit.

Finally, Appellant "claims that the trial court erred when it answered the jury's question about the definition of official oppression where it failed to provide a specific act of oppression." (Appellant's Brief, at 25) (record citation omitted). This claim is waived.

It is well settled that "[a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." *Commonwealth v. Olsen*, 82 A.3d 1041, 1050 (Pa. Super. 2013) (citation omitted). Instantly, after the jury retired to deliberate, they sent the

trial court a question in which it asked that the court re-define official oppression. (**See** N.T. Trial, 3/28/16, at 61). The trial court again instructed the jury about the elements required for a finding of official oppression. (**See id.** at 64-65). Appellant's counsel did not object. (**See id.**). Therefore, this issue is waived. **See Olsen**, **supra** at 1050.[6]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/18

_____

[6] Moreover, our review of the record confirms that the trial court's initial charge on official oppression, as well as its instruction given in response to the jury's question, both contained accurate statements of the law. (**See** N.T. Trial, 3/28/16, at 51-52, 64-65). Therefore, Appellant's claim would lack merit, even if not waived. **See Commonwealth v. Jones**, 668 A.2d 491, 517 (Pa. 1995), *cert. denied*, 519 U.S. 826 (1996) ("When reviewing a challenge to a part of a jury instruction, the Court must review the jury charge as a whole to determine if it is fair and complete. . . . Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.") (citations omitted).